EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Dora López Díaz <br> (TS-2422) <br> Carmen Cardona Rodríguez <br> (TS-6202) <br> Raúl Guemárez Nieves <br> (TS-4101) <br> Luis Flores Martínez <br> (TS-9225) <br> **Bernadette Arocho Cruz** <br> **(TS-13384)** | 2017 TSPR 106 <br><br> 198 DPR ____ |

Número del Caso: AB-2014-252

Fecha:   8 de junio de 2017

Materia:   La suspensión de la notaría de la **Lcda. Bernadette Arocho Cruz** será efectiva el 16 de junio de 2017, fecha en que se le notificó de su suspensión inmediata de la notaría.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Dora López Díaz
(TS-2422)
Carmen Cardona Rodríguez                    *Queja*
(TS-6202)
Raúl Guemárez Nieves                 AB-2014-252
(TS-4101)
Luis Flores Martínez
(TS-9225)
Bernadette Arocho Cruz
(TS-13,384)

*PER CURIAM*

En San Juan, Puerto Rico, a 8 de junio de 2017.

I

La Lcda. Bernadette Arocho Cruz fue admitida
al ejercicio de la abogacía el 30 de enero de 2001
y a la notaría el 24 de mayo de 2001. El 10 de
julio de 2014, el entonces Secretario del
Departamento de Justicia, Lcdo. César R. Miranda,
presentó una queja ante este Tribunal en contra de
varios miembros de la profesión legal, entre ellos
la licenciada Arocho Cruz.[1] Explicó que la División
de Crimen Organizado detectó ciertas

---

[1] Esta Opinión *Per Curiam* se limita a evaluar la conducta de
la Lcda. Bernadette Arocho Cruz. En cuanto a las licenciadas
Dora López Díaz y Carmen Cardona Rodríguez y los licenciados
Raúl Guemárez Nieves y Luis Flores Martínez, el procedimiento
disciplinario aún no ha culminado.

irregularidades en la toma de varios testimonios mientras investigaba un esquema de apropiación ilegal y fraude.[2] Mediante este, la persona dejaba su vehículo de motor en un concesionario de autos para darlo como "trade in" en la compra de uno nuevo. Sin embargo, el Sr. Prudo Pagán Méndez, entonces gerente de la compañía Bella International, no completaba el proceso de "trade in", pues se apropiaba de las unidades y las vendía a terceros que desconocían de la ilegalidad del acto. En lo pertinente, el licenciado Miranda señaló que algunos de los traspasos de los títulos que se estaban investigando fueron juramentados por la licenciada Arocho Cruz.[3]

En particular, las alegaciones en contra de la licenciada Arocho Cruz giran en torno a la autenticación de las firmas de la Sra. Constancia Díaz López y el Sr. Carlos Delgado Ortiz al dorso del certificado de título de un vehículo Honda Element 2003. Se desprende del índice notarial de la licenciada Arocho Cruz que el 4 de agosto de 2011, esta autenticó las firmas del señor Delgado Ortiz y la señora Díaz López mediante el testimonio de autenticidad número 264.[4] Asimismo, surge de una certificación que emitió el Departamento de Transportación y Obras Públicas con

---

[2] El 11 de julio de 2014, el Director de la Oficina de Inspección de Notarías (ODIN), Lcdo. Manuel E. Ávila De Jesús, solicitó mediante moción que, como medida cautelar, ordenáramos la incautación del sello y la obra notarial de la licenciada Arocho Cruz ante el referido del Departamento de Justicia. El 17 de julio de 2014, accedimos a esa petición y emitimos la Resolución correspondiente.

[3] El Fiscal Sergio Rubio Paredes, entonces Director de la División de Crimen Organizado, prestó una Declaración Jurada donde hizo constar las situaciones detectadas y dio fe de las gestiones realizadas para corroborar la información obtenida de los testigos y documentos públicos.

[4] Informe Preliminar de la Oficina de la Procuradora General, Anejo XIII, pág. 73.

relación al vehículo Honda Element 2003 con tablilla FLL-897, que el traspaso del mismo se llevó a cabo el 18 de agosto de 2011, cuando la señora Díaz López lo cedió al señor Delgado Ortiz.[5]

No obstante lo anterior, la señora Díaz López declaró que para el año 2011 era dueña de un Honda Element color negro, el cual su hija, Connielyn García, dio en "trade-in" en Honda de Bayamón. Señaló que en ningún momento compareció ante la licenciada Arocho Cruz a juramentar o a firmar el título del vehículo, por lo que entiende que alguien falsificó su firma. Además, indicó que no conoce al comprador del vehículo, que no le vendió el mismo y que éste no firmó ningún documento en su presencia.[6]

Por otro lado, el señor Delgado Ortiz declaró que adquirió dicho vehículo y que todo documento relacionado a la compra lo firmó con el gerente del "dealer". A preguntas del fiscal, indicó que no compareció ante la licenciada Arocho Cruz a juramentar o firmar al dorso del traspaso; no conoce a la licenciada; no autorizó a alguien a firmar a su nombre frente a esta última; y en ningún momento estuvo en su presencia la señora Díaz López.[7]

En su contestación a la queja, la licenciada Arocho Cruz explicó que el 27 de julio de 2011 comenzó a trabajar en la gestoría "D&C Vehicle Registration" propiedad de la Sra. Cherllotte Duran Couvertier. Expuso que:

> [e]l 4 de agosto de 2011, en mi primera semana de trabajo, la Sra. Duran Couvertier me solicita que

---

[5] Íd., Anejo XIV, pág. 85.
[6] Íd., Anejo X, págs. 50-53.
[7] Íd., Anejo XI, págs. 54-60.

le ayude urgentemente con un caso. Me present[ó] un expediente del concesionario de vehículos Vega Alta Motors. El referido vehículo era un Honda Element, tablilla FLL-897. Como dueña registral aparecía la Sra. Constancia Díaz López. En el expediente constaban los documentos de venta del vehículo al Sr. Carlos J. Delgado Ortiz, as[í] como copia fotostática [de] las identificaciones de ambas partes y la autorización firmada por el Sr. Delgado para que D&C realizara el traspaso del vehículo a su nombre ante el Departamento de Transportación y Obras Públicas. La Sra. Duran Couvertier me pidió que, por excepción, notarizara el traspaso, ya que por error las partes lo habían firmado en Vega Alta Motors y que el cliente ten[í]a urgencia en que se realizara el traspaso. Me mostr[ó] los documentos y pude corroborar que ambas firmas eran iguales a las que aparecían en las correspondientes licencias de conducir. El gerente de Vega Alta Motors se comunicó vía telefónica conmigo para solicitarme que hiciera una excepción en este caso, ya que el cliente tenía prisa por realizar el traspaso. Le advertí al gerente, as[í] como a la Sra. Duran que no podía [notarizar el] documento si no tenía las personas presentes, pero ellos insistieron y me recalcaron que era la práctica común en estos casos. De manera equivocada y sintiéndome presionada, procedí a notarizar el documento según se me solicit[ó].[8]

Señaló que en ningún momento sospechó que el vehículo era parte de un esquema de fraude. Además, reconoció que cometió un error al juramentar el traspaso sin tener a las personas presentes, y alegó que no obtuvo enriquecimiento alguno de la transacción (cobró $6.00 dólares por la juramentación) y que los ciudadanos involucrados no resultaron perjudicados. Explicó que la señora Díaz López "entreg[ó]" su vehículo en "trade in" y obtuvo el valor del mismo al hacer su compra de un nuevo carro, lo cual era su propósito. De igual forma, el Sr. Delgado Ortiz compr[ó] el

---

[8] Contestación a la queja de la Lcda. Bernadette Arocho Cruz, pág. 2.

vehículo, entreg[ó] sus documentos y autorizó por escrito que se realizara el traspaso del título".[9]

Posteriormente, la Procuradora General rindió un Informe Preliminar. Con relación a la licenciada Arocho Cruz, indicó que no existe controversia en cuanto a que esta dio fe falsamente de que el 4 de agosto de 2011 el señor Delgado Ortiz y la señora Díaz López firmaron en su presencia el dorso del certificado de título autorizando el traspaso del auto en cuestión. Concluyó que lo anterior puede constituir una infracción a los Artículos 2, 12 y 56 de la Ley Notarial, 4 LPRA secs. 2002, 2023 y 2091, las Reglas 65, 66 y 67 del Reglamento Notarial, 4 LPRA Ap. XXIV, y los Cánones 18, 35 y 38 de Ética Profesional, 4 LPRA Ap. IX. Sin embargo, resaltó que la letrada

> aceptó sus actuaciones en etapa temprana de este procedimiento, reconoció haber cometido un error, indicó que no hubo ánimo de lucro en sus actuaciones, pidió excusas y manifestó que ante la queja presentada se le incautó su sello desde julio de 2014 viéndose afectada en el ejercicio de la notaría y su capacidad para generar ingresos.[10]

Examinados los documentos pertinentes a la licenciada Arocho Cruz, y en vista de que no existe una controversia esencial de hechos, resolvemos sin trámite ulterior.[11]

II

Es sabido que en nuestro ordenamiento jurídico el notario es el custodio de la fe pública notarial y debe ejercer su labor con sumo esmero y celo profesional. Véase Art. 2 de la Ley Notarial, supra; In re Maldonado Giuliani,

---

[9] Íd., pág. 3
[10] Informe Preliminar de la Oficina de la Procuradora General, pág. 39.
[11] Véase In re Sánchez Ramos, 174 DPR 453 (2008); In re Davison Lampón, 159 DPR 448 (2003).

195 DPR 670, 675 (2016); In re Vázquez González, 194 DPR 688, 694 (2016); In re Toro Imbernon, 194 DPR 499, 504 (2016). Además, está obligado a cumplir con las disposiciones de la Ley Notarial de Puerto Rico, supra, su Reglamento, supra, y los Cánones del Código de Ética Profesional, supra. In re Palmer Ramos, 195 DPR 245, 254-255 (2016); In re Vázquez González, supra.

Un documento notarial avalado por la dación de fe de un notario se presume que cumple con todas las formalidades de ley y es legal, verdadero y legítimo. In re Rivera Aponte, 169 DPR 738, 741 (2006). Véase In re González Hernández, 190 DPR 164, 176-177 (2014). Asimismo, "la dación de fe brinda la confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobados con sus sentidos o ejecutados por él". In re Rivera Aponte, supra, págs. 741-742. Véase In re Toro Imbernon, supra, pág. 505.

En lo pertinente, mediante un testimonio o declaración de autenticidad un notario puede dar fe de que, en determinada fecha, se firmó un documento en su presencia y que esa persona es quien dice ser. Art. 56 de la Ley Notarial, supra; Regla 65, 66 y 67 del Reglamento Notarial, supra. Véase In re Vargas Velázquez, 193 DPR 681, 689 (2015); In re Llanis Menéndez, 175 DPR 22, 25 (2008). "La legitimación de la firma podrá o no comprender el juramento o afirmación". Regla 67 del Reglamento Notarial, supra. "[E]l notario hará constar tanto en el testimonio, como en el Registro, su conocimiento personal del firmante o en su

defecto la utilización de los medios supletorios que provee [el Art. 17 de la Ley Notarial, 4 LPRA sec. 2035]". Íd.

En vista de que las declaraciones juradas son testimonios de legitimación de firma, hemos reiterado que los notarios "[d]eben ser exigentes y abstenerse de dar fe notarial de [una] declaración jurada si la persona que va a otorgar el documento o la declaración jurada no ha comparecido personalmente". In re Llanis Menéndez, supra, págs. 25-26. Véase In re Vargas Velázquez, supra, pág. 690; In re Rivera Aponte, supra, pág. 744. Si el notario autoriza el documento en ausencia del firmante, transgrede la fe pública notarial y perjudica la confianza depositada en el sistema de autenticidad documental. In re Vargas Velázquez, supra, pág. 690; In re Llanis Menéndez, supra, pág. 26; In re Rivera Aponte, supra, pág. 744.

Además, mediante dicho acto el notario certifica un hecho falso y no solo viola la Ley Notarial, sino que también contraviene los Cánones 18, 35 y 38 del Código de Ética Profesional, supra. Íd. El Canon 18 le exige a los miembros de la profesión legal que realicen una labor competente, cuidadosa y diligente. Por lo tanto, cuando un notario contraviene las disposiciones de la Ley Notarial infringe el deber que impone dicho canon al no ejercer la profesión con el cuidado y la prudencia que esta requiere. In re Toro González II, 193 DPR 877, 890 (2015); In re Muñoz Fernós, 184 DPR 679, 685 (2012).

Por otro lado, el Canon 35 le impone a los abogados y abogadas el deber de conducirse de forma sincera y honrada

y, en particular, "ajustarse a la sinceridad de los hechos al examinar testigos, al redactar afidávits u otros documentos (...)". Canon 35 del Código de Ética Profesional, supra. Asimismo, el Canon 38 de Ética Profesional, supra, dispone que estos deben ejercer la profesión de forma digna y honorable. Hemos señalado que una conducta contraviene este canon si afecta las condiciones morales del abogado, de tal forma que lo hace indigno de pertenecer a este foro. In re Rodríguez López, 2016 TSPR 177, pág. 11, 196 DPR ___ (2016); In re Suárez Jiménez, 192 DPR 152, 164 (2014).

Por último, el Art. 12 de la Ley Notarial, 4 LPRA sec. 2023, le impone al notario el deber de rendir un índice mensual de actividad notarial,

> no más tarde del décimo día calendario del mes siguiente al mes informado, en el que harán constar respecto a las escrituras matrices y los testimonios por ellos autorizados en el mes precedente, los números de orden de éstos, los nombres de los comparecientes, la fecha, el objeto del instrumento o del testimonio, la cuantía de cada instrumento y el nombre de los testigos, de haber comparecido alguno.

Apliquemos este marco legal a los hechos ante nuestra consideración.

### III

Según mencionado, la licenciada Arocho Cruz aceptó que juramentó los traspasos sin tener a las personas que firmaron presentes. Al certificar un hecho falso en estas circunstancias la licenciada violó los Artículos 2, 12 y 56 de la Ley Notarial, supra, las Reglas 65, 66 y 67 del Reglamento Notarial, supra, y los Cánones 18, 35 y 38 de Ética Profesional, supra. Esa ausencia de cautela y celo

profesional no solo quebrantó la función pública del notariado, sino que contribuyó a un esquema de fraude, aunque esa no haya sido la intención de la licenciada. Cabe señalar que la fe que se le otorgaba al documento perseguía evitar lo ocurrido en este caso, la suplantación de las partes al autorizar el documento notarial. In re Rivera Aponte, supra, pág. 743.

En consecuencia, procede imponerle una sanción a la licenciada Arocho Cruz. Para realizar esa determinación consideraremos lo siguiente: "el historial previo [...]; su reputación en la comunidad; si la conducta se realizó con ánimo de lucro; si aceptó los cargos imputados; su arrepentimiento; y cualquier otra consideración que se estime pertinente." In re Toro González II, supra, pág. 25.

A pesar de que la licenciada Arocho Cruz aceptó que cometió la falta, el acto que realizó constituye una violación grave de su deber como notaria. Por lo tanto, estimamos procedente ordenar la suspensión inmediata e indefinida de la licenciada Arocho Cruz del ejercicio de la notaría.[12] En consecuencia, la fianza notarial queda automáticamente cancelada.[13] El Director de la Oficina de Inspección de Notarías, Lcdo. Manuel E. Ávila De Jesús, mantendrá incautada la obra y el sello notarial de la licenciada Arocho Cruz hasta que este Tribunal ordene lo contrario.

---

[12] Véase In re Vargas Velázquez, 193 DPR 681 (2015); In re Surillo Ascar, 160 DPR 742 (2003).

[13] La fianza se considerará buena y válida por tres años después de su terminación dados los actos realizados por la licenciada Arocho Cruz durante el periodo en que la misma estuvo vigente.

Notifíquese personalmente la licenciada Arocho Cruz esta Opinión *Per Curiam* y Sentencia.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Dora López Díaz
(TS-2422)
Carmen Cardona Rodríguez                                    *Queja*
(TS-6202)
Raúl Guemárez Nieves                        AB-2014-252
(TS-4101)
Luis Flores Martínez
(TS-9225)
Bernadette Arocho Cruz
(TS-13,384)

SENTENCIA

En San Juan, Puerto Rico, a 8 de junio de 2017.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se suspende inmediatamente e indefinidamente a la Lcda. Bernadette Arocho Cruz del ejercicio de la notaría. En consecuencia, la fianza notarial queda automáticamente cancelada.

El Director de la Oficina de Inspección de Notarías, Lcdo. Manuel E. Ávila De Jesús, mantendrá incautada la obra y el sello notarial de la licenciada Arocho Cruz hasta que este Tribunal ordene lo contrario.

Notifíquese personalmente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo