EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Luis A. Flores Martínez<br>(TS-9225) | 2018 TSPR 27<br><br>199 DPR ____ |

Número del Caso: AB-2014-252


Fecha: 7 de febrero de 2018


Oficina del Procurador General:

      Lcdo. Joseph Feldstein Del Valle
      Sub Procurador General

      Lcdo. Andrés Pérez Correa
      Procurador General Auxiliar


Abogado del promovido:

      Por derecho propio


Materia: Conducta Profesional – La suspensión del abogado será efectiva el 20 de febrero de 2018, fecha en que se le notificó al abogado de su suspensión inmediata


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis A. Flores Martínez     AB-2014-252
      (TS-9225)

*Per Curiam*

En San Juan, Puerto Rico, a 7 de febrero de 2018.

I

El 28 de junio de 1989 admitimos al Lcdo. Luis A. Flores Martínez al ejercicio de la abogacía y el 16 de agosto de 1989 prestó juramento como notario. El entonces Secretario del Departamento de Justicia, Lcdo. César R. Miranda, refirió al licenciado Flores Martínez a este Tribunal por su intervención como notario en un esquema de apropiación ilegal y fraude que la División de Crimen Organizado estaba investigando.[1] El licenciado Miranda indicó que el letrado

---

[1] El 11 de julio de 2014, el Director de la Oficina de Inspección de Notarías (ODIN), Lcdo. Manuel E. Ávila De Jesús, solicitó mediante moción que, como medida cautelar, ordenáramos la incautación del sello y la obra notarial del licenciado Flores Martínez ante el referido del Departamento de Justicia. El 15 de julio de 2014, accedimos a esa petición y emitimos la Resolución correspondiente. El 6 de mayo de 2015, el licenciado Flores Martínez solicitó la devolución de su obra notarial, por lo que emitimos una Resolución concediéndole un término a la ODIN

autorizó dos traspasos de vehículos de motor en los cuales al menos uno de los comparecientes no estuvo presente.[2] En particular, las alegaciones contra el licenciado Flores Martínez se relacionan a los traspasos de un Hyundai Accent del 2005 y un Toyota Corolla del 1998.[3]

De la investigación surge que la Sra. Carolina Delgado Alvarado entregó en *trade-in* el Hyundai Accent al personal del concesionario con copia de su licencia y el título de propiedad ya firmado, en ausencia de un notario. Luego, la Sra. Bresilda González Rivera compró dicho vehículo y también firmó el traspaso sin la intervención de un notario. Por su parte, la señora Delgado Alvarado indicó que no conocía a la señora González Rivera y que no le vendió el Hyundai Accent. Asimismo, la señora González Rivera declaró que el vehículo se lo compró a un joven y no a la señora Delgado Alvarado.

A pesar de lo anterior, se desprende del índice notarial del licenciado Flores Martínez que el 29 de junio de 2011 otorgó el testimonio de autenticidad Núm. 27087, en el cual comparecieron las señoras González Rivera y Delgado Alvarado

---

para que se expresara sobre dicho asunto. ODIN compareció y expresó que no tenía objeción con lo solicitado por el licenciado porque este no tenía asunto pendiente que atender ante la oficina. En consecuencia, emitimos una Resolución ordenándole al Archivero General de Protocolos del Distrito de San Juan que, de solicitárselo el notario, le hiciera entrega de sus protocolos.

[2] Dicho acto permitió que el Sr. Prudo Pagán Méndez, entonces gerente del concesionario Bella International, se apropiara de las unidades y las vendiera a terceros que desconocían de la ilegalidad del acto.

[3] En lo pertinente al licenciado Flores Martínez, la parte promovente incluyó las declaraciones juradas de las señoras Bresilda González Rivera, Carolina Delgado Alvarado, Idalis Trinidad Sierra y de los señores Wilfredo Morales Matos, Luis Delgado González y Isnaldo Beltrán Jaimes.

para el traspaso de un auto.[4] También surge de una certificación que emitió el Departamento de Transportación y Obras Públicas con relación al vehículo Hyundai Accent 2005 con tablilla GJL-200, que el 29 de junio de 2011 se registró el traspaso a favor de la señora González Rivera.[5]

Con relación al Toyota Corolla del 1998, la Sra. Idalis Trinidad Sierra explicó que le entregó el título de propiedad firmado a su hija, aunque sin la intervención de un notario, para que esta lo entregara en *trade-in* y adquiriera otro. Por su parte, el Sr. Isnaldo Beltrán Jaimes declaró que le compró el vehículo a un caballero y explicó lo siguiente:

> Cuando le pregunté al caballero por los documentos del auto, él me indica que tiene título, la licencia y que está firmado por la persona que lo dejó en el dealer[s]. Me dijo que el traspaso se hace a través de un abogado con un afidávit. Ese mismo día fuimos los dos a la gestoría frente al CESCO de Río Piedras y cuando llegamos el abogado no estaba de momento y ya tenía los documentos del vehículo. El t[í]tulo ya estaba firmado. Fui al otro día a la misma gestoría [...] [y] [c]on el abogado firmé el título, solamente estábamos el abogado y yo.[6]

Sin embargo, surge del dorso del certificado de título que el 2 de septiembre de 2011, el licenciado Flores Martínez autenticó las firmas del señor Beltrán Jaimes y la señora Trinidad Sierra mediante el testimonio Núm. 28000.[7] Por otro lado, también se desprende del índice notarial del

---

[4] Informe Preliminar de la Oficina de la Procuradora General, Anejo XXXIX, pág. 363. Cabe mencionar que el número de afidávit incluido al dorso del traspaso en cuestión -27392- es distinto al número expuesto en el índice notarial -27087-, pero coinciden los comparecientes y la fecha.
[5] Íd., Anejo XL, pág. 365.
[6] Íd., Anejo XLI, págs. 367-368.
[7] Íd., Anejo XLII, pág. 374.

licenciado que el 2 de septiembre de 2011 este autenticó las firmas del Sr. Ismaldo Beltrán Acarón y de la Sra. Idalis Trinio Lugo mediante el testimonio de autenticidad Núm. 27198.[8] Además, en la certificación que emitió el Departamento de Transportación y Obras Públicas en cuanto al vehículo Toyota Corolla 1998 con tablilla DFG-056, se indicó que el 26 de septiembre de 2011 se realizó el traspaso del mismo a favor del señor Beltrán Jaimes.[9]

En su contestación a la queja, el licenciado Flores Martínez señaló que de la comunicación del entonces Secretario de Justicia y de la declaración jurada del fiscal Sergio Rubio Paredes no surgía imputación alguna contra él; en cambio, se limitaban a solicitar una investigación.[10] Además, expresó que no participó en traspasos ilegales de vehículos de motor y que no tenía objeción alguna a que se investigara su obra notarial.

Posteriormente, la Procuradora General rindió un informe preliminar. En cuanto al licenciado Flores Martínez, indicó que el 28 de julio de 2016 le envió al licenciado una comunicación concediéndole hasta el 5 de agosto de 2016 para que se expresara sobre las declaraciones juradas tomadas por la División de Crimen Organizado y Drogas con relación a los testimonios de autenticación en cuestión. Además, se le

---

[8] Íd., Anejo XLIII, pág. 375.
[9] Íd., Anejo XLIV, pág. 380.
[10] El fiscal Sergio Rubio Paredes, entonces Director de la División de Crimen Organizado, prestó una Declaración Jurada donde hizo constar las situaciones detectadas que se refirieron a este Tribunal.

indicó que debía explicar cómo identificó a los declarantes y que sometiera toda la evidencia documental que poseyera en torno a este asunto.

La Procuradora General señaló que el licenciado Flores Martínez compareció el 4 de agosto de 2016, pero no explicó lo relacionado a la identificación de los comparecientes. En cambio, el licenciado reiteró que de los documentos que se le remitieron no surgía que haya incurrido en conducta impropia y solicitó el archivo de la queja. Señaló que

> Parece ser que las personas que suscribieron las declaraciones juradas han estado confundidas por dos hechos: 1. Que en las licencias de los automóviles aparecen las firmas del alegado vendedor y comprador; y 2. Que los declarantes parecen desconocer que las dos firmas no requieren autenticación notarial. Solamente una.
>
> No es correcto que ambas firmas deban ser autenticadas ante notario. Basta que sea autenticada la firma del *dealer adquirente* o su empleado o representante. El art. 2.3[4] (c) de la Ley de Vehículos y Tránsito del año 2000 expresamente dispone que el notario puede autenticar el traspaso de un vehículo dado en *trade in* con la sola firma de dicho dealer adquirente o su representante, siempre que aparezca en la licencia que el dueño anterior la ha firmado, aunque no sea ante notario. (9 LPRA sec. 5035(c)).[11] Dado que en dichas licencias

---

[11] El Art. 2.34 de la Ley de Vehículos y Tránsito de Puerto Rico vigente cuando el licenciado Flores Martínez autorizó los traspasos, disponía lo siguiente:

Traspaso de vehículos de motor, arrastres o semiarrastres

Todo traspaso de vehículos de motor, arrastres o semiarrastres inscritos se realizará de acuerdo con las siguientes normas:

 (a) El traspaso se autorizará mediante la firma o marca del dueño del vehículo de motor, [...] y del adquirente, al dorso del certificado de título del vehículo de motor [...].
 (b) El traspaso y aceptación deberá hacerse bajo juramento o afirmación ante notario público, colector de rentas internas o empleado en que por escrito expresamente este delegue, o

aparecen las dos firmas, de vendedor y de comprador, los declarantes parecen haber entendido que el notario ha autenticado ambas. Lo que no es correcto.

Esa legislación se aprobó precisamente para recoger la práctica ordinaria de estos negocios, en los cuales el dealer se ocupa de recibir la licencia firmada por el cedente. Luego el notario autentica la firma del dealer, no la del cedente.[12]

Así las cosas, la Procuradora General le remitió una nueva comunicación concediéndole hasta el 22 de agosto de 2016 para que contestara varias interrogantes con relación a la autenticación de las firmas.[13] Ante su incomparecencia, dicha oficina nos solicitó en el informe preliminar que le ordenáramos al licenciado a contestar el requerimiento. Además, expuso que de las declaraciones prestadas surgía que este pudo haber violado: (a) los Arts. 2, 12 y 56 de la Ley Notarial de Puerto Rico (Ley Notarial), 4 LPRA secs. 2002,

---

funcionario expresamente autorizado por el Secretario para ese fin [...].

(c) En los casos en que un concesionario de venta de vehículos de motor tome unidades usadas, como parte del pronto pago del precio de otros vehículos de motor, el traspaso podrá efectuarse mediante declaración jurada suscrita por el concesionario o vendedor, siempre y cuando, el dueño del vehículo de motor haya expresado previamente su voluntad de cederlo o traspasarlo a éste, estampando su firma al dorso del certificado de título del vehículo. En tales casos, la declaración jurada del concesionario deberá especificar la fecha en que fue cedida o entregada la unidad, el nombre y la dirección del dueño, al igual que el medio usado para la adecuada identificación de dicha persona. También deberá incluir una descripción detallada del vehículo de motor, la cual deberá contar con los datos siguientes: marca, año, color, modelo o tipo, número de tablilla, número de registro del vehículo de motor, número de identificación del vehículo, tipo de motor, caballos de fuerza de uso efectivo, número de marbete, número de puertas y cualquier otros números o marcas de identificación de la unidad o de sus piezas. 9 LPRA sec. 5035 (ed. 2013).

[12] Íd., Anejo XLVI, pág. 428.

[13] Íd., Anejo XLVII, págs. 430-431. Por ejemplo, se le solicitó que contestara si los comparecientes firmaron ante él, y cómo los identificó, así como quién le solicitó llevar a cabo la autenticación de la firma y dónde se llevó a cabo.

2023 y 2091; (b) las Reglas 65, 66 y 67 del Reglamento Notarial, 4 LPRA Ap. XXIV; y (c) los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

En consecuencia, el 6 de marzo de 2017 notificamos una Resolución concediéndole al licenciado Flores Martínez un término de 10 días para contestar el requerimiento de información, so pena de sanciones. Asimismo, le concedimos a la Oficina del Procurador General un término de 30 días, contado a partir del recibo del requerimiento de información, para presentar un informe complementario en torno al licenciado.

Posteriormente, el Procurador General presentó un informe complementario, en el cual advirtió que el licenciado Flores Martínez no cumplió con nuestra orden. Además, razonó que, debido a que las declaraciones juradas que tomó la División de Crimen Organizado y Drogas surgieron en el contexto de una investigación criminal, estas cumplían con el estándar de prueba clara, robusta y convincente necesario para imputar una violación ética. Además, señaló que el desinterés del licenciado durante el proceso disciplinario constituyó una violación a los Cánones 9 y 12 del Código de Ética Profesional, supra.

El 27 de abril de 2017, el licenciado Flores Martínez compareció mediante una moción de prórroga. Señaló que recibió el informe complementario del Procurador General y que no es correcto que haya incumplido con orden alguna. Mencionó que, una vez recibió copia de las declaraciones

juradas, le comunicó su postura a la Oficina del Procurador General el 4 de agosto de 2016. Además, solicitó una prórroga de 20 días para reaccionar al informe presentado.

El 24 de mayo de 2017 notificamos una Resolución concediéndole al licenciado Flores Martínez un término final de 15 días para expresarse en cuanto al informe complementario. Le apercibimos que de no comparecer en el término provisto se allanaba a la recomendación formulada en el informe y se exponía a sanciones severas como la suspensión de la abogacía. Al presente, el licenciado no ha comparecido.

II

El Canon 9 del Código de Ética Profesional, supra, le requiere a los miembros de la profesión legal que su conducta hacia los tribunales se caracterice por el mayor respeto. Esto necesariamente implica que desatender nuestras órdenes y mostrarse indiferente ante nuestros apercibimientos constituye una violación a este canon. In re Baretty Torres, 195 DPR 600, 604 (2016); In re Pastrana Silva, 195 DPR 366, 369 (2016). En consideración a lo anterior, hemos reiterado que esa conducta improcedente por parte de los letrados resulta suficiente para imponer como sanción la suspensión inmediata e indefinida de la abogacía y la notaría. In re Mangual Acevedo, 197 DPR 998, 1001 (2017); In re Baretty Torres, supra; In re Pastrana Silva, supra. También procede dicha sanción cuando se incumple con los requerimientos de una entidad a la cual le hemos delegado alguna función

relacionada con las tareas de regular el ejercicio de la profesión, como lo es la Oficina del Procurador General. In re Baretty Torres, supra, págs. 604-605.

Asimismo, los abogados y abogadas tienen el deber de "desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en [la] tramitación y solución [de las causas]". Canon 12 del Código de Ética Profesional, supra. Sobre esto, hemos expresado que "[e]l compromiso de mantener y contribuir a un orden jurídico íntegro y eficaz, para lograr la más completa confianza y apoyo de la ciudadanía, se extiende no sólo a la esfera de la litigación de causas sino a la jurisdicción disciplinaria de este foro. […] " In re Ríos Acosta I, 143 DPR 128, 135 (1997) citando a In re Pérez Rodríguez, 115 DPR 810, 811 (1984). Véase In re Miranda Gutiérrez, 188 DPR 745, 748 (2013); In re García Ortiz, 187 DPR 507, 517 (2012). Es decir, estos tienen la obligación de responder con premura y diligencia los requerimientos cursados con relación a una queja por conducta profesional o se exponen a sanciones disciplinarias serias. In re García Ortiz, supra.

El Canon 18 requiere "que los abogados y abogadas, así como los notarios y las notarias, sean especialmente diligentes en el cumplimiento de sus obligaciones, voluntariamente asumidas, como custodios de la fe pública notarial". In re Pagani Padró, 2017 TSPR 149, 11, 198 DPR ____ (2017). A esos efectos, un notario que viola las disposiciones de la Ley Notarial y su Reglamento contraviene

lo dispuesto en este canon. <u>In re Arocho Cruz</u>, 2017 TSPR 106, 7, 198 DPR ___ (2017); <u>In re Maldonado Maldonado</u>, 197 DPR 802, 813 (2017) *citando a* <u>In re Aponte Berdecía</u>, 161 DPR 94, 106 (2004). ("[U]na vez un notario contraviene la ley vigente, incurre en una práctica notarial indeseable y contraviene el canon mencionado".)

Por otro lado, el Canon 35 exige que los miembros de la profesión legal se conduzcan de forma sincera y honrada y, en particular, que se "ajust[en] a la sinceridad de los hechos al examinar testigos, al redactar afidávits u otros documentos [...]". Canon 35 del Código de Ética Profesional, <u>supra</u>. Además, según el Canon 38 del Código de Ética Profesional, <u>supra</u>, estos deben "esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión [...]". Un abogado viola este canon cuando la conducta que realiza afecta sus condiciones morales y hace que sea indigno de pertenecer a este foro. <u>In re Rodríguez López</u>, 196 DPR 199, 208 (2016).

Resulta pertinente mencionar que los profesionales del Derecho que ejerzan la notaría están obligados a cumplir, además de con los Cánones del Código de Ética Profesional, con las disposiciones de la Ley Notarial de Puerto Rico, y su Reglamento. <u>In re Pagán Díaz</u>, 2017 TSPR 108, 5, 198 DPR ___ (2017); <u>In re Arocho Cruz</u>, <u>supra</u>, pág. 7. Según el Art. 2 de la Ley Notarial, <u>supra</u>, el notario "ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos

extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales". Asimismo, "[l]a fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento". Art. 2 de la Ley Notarial, supra. Por la importancia que reviste la función notarial en nuestro ordenamiento, esta se debe realizar con sumo esmero y celo profesional. In re Márquez Colón, 2017 TSPR 129, 8, 198 DPR ___ (2017).

Entre los documentos que autoriza un notario se encuentran las declaraciones de autenticidad o afidávits. Estos "son documentos de tipo privado en los cuales el Notario da fe de la autenticidad de la o de las firmas, un hecho o un contrato. Estas declaraciones de autenticidad pueden referirse a que una traducción o una copia son fieles y exactas, y pueden comprender o no el juramento". P. Malavet Vega, El Derecho Notarial en Puerto Rico, Ponce, Ediciones Omar, 2010, pág. 139. Véase Art. 56 de la Ley Notarial, supra; Reglas 65, 66 y 67 del Reglamento Notarial, supra.

Cuando legitima una firma, el notario "acredita el hecho de que, en determinada fecha, una firma ha sido puesta en [su] presencia [...] y por quien evidentemente es quien dice ser". Regla 67 del Reglamento Notarial, supra. Asimismo, "hará constar tanto en el testimonio, como en el Registro, su conocimiento personal del firmante o en su defecto la utilización de los medios supletorios que provee

[el Art. 17 de la Ley Notarial, 4 LPRA sec. 2035]". Íd. Mediante este testimonio notarial se garantizan dos cosas esenciales: (1) la identidad del firmante; (2) y que se realizó el acto ante el notario. Malavet Vega, op.cit., pág. 306. Por lo tanto, los notarios deben "abstenerse de dar fe notarial de [una] declaración jurada si la persona que va a otorgar el documento o la declaración jurada no ha comparecido personalmente". In re Llanis Menéndez, 175 DPR 22, 25-26 (2008). Véase In re Vargas Velázquez, 193 DPR 681, 690 (2015). De hacerlo, ese funcionario "transgrede la fe pública notarial y perjudica la confianza depositada en el sistema de autenticidad documental". In re Arocho Cruz, supra, pág. 6.

Conviene destacar que mediante dicho acto el notario incurre en una de las faltas más graves, a saber, la certificación de un hecho falso. In re Márquez Colón, supra, págs. 10-11; In re Vargas Velázquez, supra, pág. 690; In re Llanis Menéndez, supra, pág. 26. Ello, además de violar la Ley Notarial, contraviene los Cánones 18, 35 y 38 del Código de Ética Profesional, supra. Íd.

Por último, el Art. 12 de la Ley Notarial, 4 LPRA sec. 2023, dispone que

> Los notarios remitirán a la Oficina de Inspección de Notarías de Puerto Rico un índice sobre sus actividades notariales, no más tarde del décimo día calendario del mes siguiente al mes informado, en el que harán constar respecto a las escrituras matrices y los testimonios por ellos autorizados en el mes precedente, los números de orden de éstos, los nombres de los comparecientes, la fecha, el objeto del instrumento o del testimonio,

la cuantía de cada instrumento y el nombre de los testigos, de haber comparecido alguno.

III

Examinado el expediente ante nuestra consideración, concluimos que, al certificar un hecho falso, el licenciado Flores Martínez violó los Arts. 2, 12 y 56 de la Ley Notarial, supra, las Reglas 65, 66 y 67 del Reglamento Notarial, supra, y los Cánones 18, 35 y 38 del Código de Ética Profesional, supra. En particular, este laceró la fe pública notarial al acreditar que los traspasos en cuestión se firmaron ante él, cuando al menos uno de los comparecientes no estuvo presente- un hecho que el licenciado no niega. En cambio, el letrado intenta justificar lo ocurrido, aunque infructuosamente. Es decir, independientemente de lo que indique la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 22-2000, 9 LPRA sec. 5001 et seq., surge de los índices notariales del licenciado que este dio fe de un hecho falso al indicar que autenticó las firmas de individuos que no comparecieron ante él.

Además, el letrado contravino los deberes plasmados en los Cánones 9 y 12 del Código de Ética Profesional, supra, al obstaculizar la labor de la Oficina del Procurador General. Según mencionamos, el licenciado no contestó oportunamente y de forma precisa las interrogantes cursadas, a pesar de las oportunidades concedidas por esa oficina y de que este Tribunal también se lo ordenó. Valga señalar que luego de que incumpliera con nuestra orden y el Procurador

General presentara su informe complementario, le concedimos una prórroga para que reaccionara a dicho escrito, pero no lo hizo. Esto, aunque se le apercibió que se allanaba a la recomendación incluida en el mismo y que se exponía a sanciones severas como la suspensión de la abogacía.

Ante estas violaciones por parte del licenciado, nos corresponde determinar qué sanción se le debe imponer, en consideración a:

> (1) la buena reputación del abogado en la comunidad; 2) su historial previo; 3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; 4) la aceptación de la falta y su sincero arrepentimiento; 5) si se trata de una conducta aislada; 6) el ánimo de lucro que medió en su actuación; 7) el resarcimiento al cliente; y 8) cualesquiera otras consideraciones, ya bien atenuantes o agravantes, que medien según los hechos. In re Pagani Padró, supra, págs. 16-17.

Aunque esta es la primera ocasión que el licenciado es disciplinado por este Foro, resulta pertinente que este no aceptó que cometió la falta que se le imputó, a pesar de la gravedad de la misma. Es decir, la actuación del licenciado facilitó un esquema fraudulento. Además, su desinterés causó una dilación indebida en el trámite disciplinario.

Por tanto, ante la desidia demostrada por el licenciado, así como su grave menosprecio a su labor como notario, se suspende inmediatamente del ejercicio de la abogacía por un término de 3 meses y del ejercicio de la

notaría inmediata e indefinidamente.[14] En consecuencia, la fianza notarial queda automáticamente cancelada.[15]

Se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados. Deberá además informar inmediatamente de su suspensión a los foros judiciales y administrativos en que tenga asuntos pendientes. Por último, deberá acreditar a este Tribunal el cumplimiento con lo anterior dentro del término de 30 días a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiere conllevar que no se le reinstale cuando lo solicite.

El Alguacil de este Tribunal deberá incautar la obra y el sello notarial del señor Flores Martínez y entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente a este foro.

Notifíquese personalmente al señor Flores Martínez esta Opinión *Per Curiam* y Sentencia.

Se dictará sentencia de conformidad.

---

[14] Véase In re Arocho Cruz, 2017 TSPR 106, 7, 198 DPR ___ (2017), In re Vargas Velázquez, 193 DPR 681 (2015); In re Surillo Ascar, 160 DPR 742 (2003).

[15] La fianza se considerará buena y válida por tres años después de su terminación debido a los actos realizados por el licenciado Flores Martínez durante el periodo en que la misma estuvo vigente.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Luis A. Flores Martínez
   (TS-9225)

                                    AB-2014-252

                         SENTENCIA

    En San Juan, Puerto Rico, a 7 de febrero de 2018.

        Por los fundamentos expuestos en la Opinión *Per Curiam*
que antecede, la cual se hace formar parte de la presente
Sentencia, se suspende inmediatamente al Lcdo. Luis A.
Flores Martínez del ejercicio de la abogacía por un término
de 3 meses y del ejercicio de la notaría inmediata e
indefinidamente. En consecuencia, la fianza notarial queda
automáticamente cancelada.

        Se le impone el deber de notificar a todos sus clientes
sobre su inhabilidad para continuar representándolos y
devolverles cualesquiera honorarios recibidos por trabajos
no realizados. Deberá además informar inmediatamente de su
suspensión a los foros judiciales y administrativos en que
tenga asuntos pendientes. Por último, deberá acreditar a
este Tribunal el cumplimiento con lo anterior dentro del
término de 30 días a partir de la notificación de esta
Opinión *Per Curiam* y Sentencia. No hacerlo pudiere conllevar
que no se le reinstale cuando lo solicite.

        El Alguacil de este Tribunal deberá incautar la obra y
el sello notarial del señor Flores Martínez y

entregarlos al Director de la Oficina de Inspección de Notarías para el examen e informe correspondiente a este foro.

Notifíquese personalmente al señor Flores Martínez esta Opinión *Per Curiam* y Sentencia.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Rivera García concurre en parte y disiente en parte y hace constar la siguiente expresión:

"A la luz de los hechos de este caso, considero que, por la gravedad del asunto y el desdén en el comportamiento desplegado por el abogado, procede que impongamos como sanción la suspensión de la práctica de la profesión de la abogacía por un año y la suspensión inmediata e indefinida del ejercicio de la notaría. Evidentemente, sus actuaciones surgen como parte de un esquema criminal de apropiación ilegal y fraude. Según surge del expediente, éste: (1) certificó un hecho falso, (2) facilitó un esquema fraudulento, (3) laceró la fe pública notarial al acreditar que los traspasos se firmaron ante él sin estar los comparecientes, (4) obstaculizó la labor de la Oficina del Procurador General, (5) no contestó los requerimientos solicitados en el momento en que se le cursaron varias interrogantes relacionadas a la investigación, (6) causó dilación indebida en el trámite del proceso disciplinario, y, (7) aun cuando le concedimos varias oportunidades y prórrogas en los términos para expresarse, incumplió con las órdenes emitidas por esta Curia.

A pesar de que es la primera vez que el letrado es disciplinado, no deberíamos pasar por alto el carácter grave de las actuaciones cometidas. Tampoco el hecho de que no aceptó la falta imputada, no demostró arrepentimiento alguno e incumplió con las órdenes de éste Tribunal. Su actitud de indiferencia demuestra una afrenta a nuestra autoridad y una patente falta de interés en continuar ejerciendo la profesión, actitud que en otras instancias ha sido causa suficiente para que un abogado o una abogada sea suspendido o suspendida inmediata e indefinidamente del ejercicio de la profesión legal. Véase *In re Rodríguez Ruiz*, 2017 TSPR 102, 197 DPR __ (2017); *In re Rodríguez Gerena*, 2017 TSPR 40, 197 DPR __ (2017); *In re Figueroa Cortés*, 196 DPR 1 (2016); *In re López González, et al.*, 193 DPR 1021 (2015); *In re Vera Vélez*, 192 DPR 216 (2015); *In re Irizarry Irizarry*, 190 DPR 368 (2014); *In re De León Rodríguez,* 190 DPR 378 (2014); *In re Toro Soto*, 181

DPR 654 (2011); *In re Martínez Sotomayor I*, 181 DPR 1 (2011)".


                        Juan Ernesto Dávila Rivera
                      Secretario del Tribunal Supremo