EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| In re:<br><br>    Rafael H. Román Jiménez | 2004 TSPR 68<br><br>161 DPR _____ |

Número del Caso: TS-9606


Fecha: 30 de abril de 2004


Oficina de Inspección de Notarías:

                    Lcda. Carmen H. Carlos
                    Directora


Abogado de la Parte Querellada:

                    Lcdo. Luis D. Lavergne Colberg


 Materia: Conducta Profesional
          (La suspensión del abogado advino final y firme el día
          6 de mayo de 2004).




Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

  Rafael H. Román Jiménez              TS-9606

PER CURIAM

San Juan, Puerto Rico, a 30 de abril de 2004.

El 31 de enero de 2003, la Directora de la Oficina de Inspección de Notarías (en adelante, "Directora") le envió al notario Rafael H. Román Jiménez (en adelante, "Lcdo. Román Jiménez") una copia del informe sometido por el Inspector de Protocolos, Lcdo. Héctor E. Sánchez Sánchez, de fecha de 27 de enero del mismo año. De ese informe se desprende que en la mayoría de instrumentos públicos contenidos en los protocolos de su obra notarial para los años de 1998, 1999 y 2000, no se habían adherido los correspondientes sellos de rentas internas e impuestos notariales, lo que

reflejaba una deficiencia de $3,764.00. Asimismo, dicho informe también reveló que el notario Román Jiménez no canceló los sellos de Asistencia Legal en 992 asientos del Libro de Registro de Testimonios, representando el total de la deficiencia $2,976.00. El monto total de araceles sin cancelar ascendía a $6,690.00.

A tenor con lo establecido en la Ley y el Reglamento Notarial, la Directora requirió al Lcdo. Román Jiménez que informara por escrito, en un término de 15 días, cualquier objeción que pudiera tener respecto al informe. No obstante, el notario no respondió a este requerimiento. Por tal razón, el 13 de agosto de 2003, la Directora nos remitió su informe sobre el estado de la notaría del referido licenciado. En éste, la Directora expresó que la actuación del notario violaba la fe pública notarial, toda vez que en cada escritura éste daba fe de haber adherido los referidos aranceles a sabiendas de que ese hecho era falso. A raíz de este hecho, nos solicitó que tomáramos las medidas disciplinarias que estimáramos pertinentes.

Así, mediante Resolución de 14 de noviembre de 2003, le concedimos al Lcdo. Román Jiménez un término de 20 días para que corrigiera las deficiencias señaladas por la Directora en su informe y mostrara causa por la cual no le debíamos imponer sanciones disciplinarias.

Conforme a lo ordenado, el 5 de diciembre de 2003, el Lcdo. Román Jiménez compareció ante nos. Alegó, en

esencia, que había subsanado las deficiencias señaladas por la Directora el 28 febrero de 2003, fecha en que dicha oficina había acordado inspeccionar nuevamente su obra. No obstante, según expone, el Inspector de Protocolos canceló su visita y acordó en comunicarse con éste para pautar una nueva cita. A pesar de esto, ambas partes no volvieron a comunicarse hasta que, en el mes de agosto de 2003, la Directora presentó el informe en cuestión ante este Tribunal.

Sobre su desatención al requerimiento de la Oficina de Inspección de Notarías (en adelante, "ODIN"), éste expresó que no lo hizo pues entendía que responder al mismo era discrecional, y al no tener objeciones a los señalamientos del informe decidió acatarlo. Con ese fin, procedió inmediatamente a adherir los aranceles notariales, en espera de que el Inspector se comunicara con éste nuevamente y pautara una próxima cita. Expresó, por último, que nunca fue su intención desatender los señalamientos que le hiciera la ODIN, y mucho menos incumplir con las obligaciones y deberes que le impone la ley.

A raíz de dicha comparecencia, le concedimos 20 días a la Directora para que se expresase en torno a ésta. Conforme a ello, el 5 de marzo de 2004, la Directora presentó ante nos una "Moción en Cumplimiento de Orden", en la que nos informó que todas las deficiencias señaladas, salvo una, fueron subsanadas por el notario de

epígrafe.[1]  No obstante, manifestó su preocupación en cuanto a las expresiones del referido notario en su escrito mostrando causa.  Al respecto, señaló que el notario debió comparecer por escrito ante dicha oficina tan pronto se le notificó de las deficiencias encontradas en su obra, independientemente que estuviera de acuerdo o no con los hallazgos de su oficina.  Sobre este particular, la Directora expresó que "[p]ensar que comparecer por escrito era enteramente discrecional nos parece un mal juicio en este contexto; e intimar que el deber de adherir y cancelar sellos e impuesto notarial depende de la inspección o reinspección de un Inspector de Protocolos es una mal enfoque en lo que concierne a este importantísimo deber."  Por tal razón, nos solicitó que le impusiéramos sanciones económicas al Lcdo. Román Jiménez.

Luego de evaluar detenidamente las comparecencias de ambas partes, estamos en posición de resolver.

II

Todo notario tiene la ineludible obligación de adherir y cancelar en cada documento o instrumento público que autorice y en las copias certificadas que de ellas expida los correspondientes aranceles notariales. Artículo 10 de la Ley Notarial, 4 L.P.R.A. sec. 2006; Ley de Arancel Notarial, Ley Núm. 101 de 1943, 4 L.P.R.A.

---

[1] Actualmente, el Inspector de Protocolos y el referido abogado están coordinando sus esfuerzos para subsanar la escritura que faltaba.

sec. 81. Se trata, pues, de un deber ministerial al que deberá darle cumplimiento estricto y que requiere que el arancel sea adherido al momento de su otorgamiento. *In re Cardona Estelritz*, 137 D.P.R. 453, 455 (1994). Ello debido a que en estas copias certificadas que el notario expide, éste da fe de haber adherido y cancelado los referidos aranceles. Por tanto, al no hacerlo estaría dando fe de haber realizado un acto que realmente no efectuó, lo que constituye una falta extremadamente grave. *In re Vergne Torres*, 121 D.P.R. 500 (1988); *In re Collazo*, 119 D.P.R. 61 (1987); *In re Jiménez Del Valle*, 119 D.P.R. 41 (1987); *In re Aponte Arché*, 117 D.P.R. 837 (1986); *In re Currás Figueroa*, 81 D.P.R. 645 (1960); *In re Ramos*, 77 D.P.R. 107 (1954).

El incumplimiento con esta obligación incide directamente en la validez del instrumento público de que se trate en perjuicio de otorgantes y terceros. Hasta tanto dichos sellos no sean adheridos o cancelados, la validez de dichos documentos o de las copias certificadas está en entredicho, pues éstos son anulables o ineficaces. Artículo 10 Ley Notarial, *supra; In re Colón,* 129 D.P.R. 490 (1998).

Además, incumplir con esta singular obligación expone al notario a que sea objeto de las más severas sanciones disciplinarias, y conlleva que pueda ser responsable tanto en el ámbito civil como en el penal dependiendo de las circunstancias en que ocurra tal

violación. *In re Colón,* supra*; In re Collazo*, supra. La práctica de no cancelar los correspondientes aranceles podría resultar en la configuración de un delito de apropiación ilegal, por cuanto el importe de éstos normalmente es cobrado por el notario a su cliente al momento de otorgar el instrumento público. *In re Merino Quiñones*, 115 D.P.R. 812, 814 (1984). Asimismo, el notario que incurra en tal actuación defrauda al erario toda vez que tanto la Ley Notarial y la Ley de Aranceles disponen para el cobro de derechos, en los instrumentos públicos, a través de los sellos de rentas internas a favor del Estado y del Colegio de Abogados. 4 L.P.R.A. secs. 856 y 1006; Véase además, *In re Cardona Estelritz*, supra; *In re Quidgley Viera*, 119 D.P.R. 72 (1987); *In re Platón*, 113 D.P.R. 273, 274 (1982).

Por otro lado, constituye una práctica altamente indeseable el que un notario espere a que se le inspeccionen los protocolos de su obra notarial para entonces proceder a adherir y cancelar los referidos sellos. Ello contribuye a que se dilate, entorpezca y encarezca innecesariamente el proceso de inspección. *In re Casiano Silva*, supra, a la pág. 348. En la inmensa mayoría de los casos implica nuevamente un proceso de inspección que económicamente sufraga el Estado. *Id.*

A partir de este trasfondo jurídico, procedemos a resolver el asunto ante nuestra consideración.

III

En el caso ante nos, las deficiencias arancelarias en la obra notarial del Lcdo. Román Jiménez ascendían a $6, 740.00. En la gran mayoría de los instrumentos, el referido notario no canceló los derechos arancelarios; tampoco canceló los sellos de Asistencia Legal en 992 asientos del Registro de Testimonios. Evidentemente, no se trata aquí de un caso en el que estemos hablando de deficiencias en la cancelación, sino de una ausencia total de aranceles notariales. Como acotáramos previamente, con esta actuación, el Lcdo. Román Jiménez violó la fe pública notarial. Éste debió cancelar los aranceles tan pronto le era satisfecha la suma para ello. Al no hacerlo, puso en riesgo la validez de cada uno de los instrumentos que autorizó, lo que pudo haber tenido grandes repercusiones para sus clientes y terceros.

Si bien es cierto que posteriormente el Lcdo. Román Jiménez canceló la gran mayoría de los derechos arancelarios, debemos advertir que dicha actuación constituye una deficiente práctica notarial, la cual no estamos dispuestos a seguir validando. Como expresáramos en *In re Casiano Silva*, supra, esta práctica "[m]ina también el buen sentir de lo que profesionalmente exige la mejor práctica notarial...[p]osponer innecesariamente la cancelación de los aranceles notariales en los originales y dar fe por otra parte de que se ha cumplido con este deber notarial, representa una burla al

principio de la dación de fe notarial." *Id*. a la pág. 348. El notario no debe esperar a que venga un inspector para cumplir con el ineludible deber de cancelar los aranceles notariales. Máxime cuando los clientes de éste y terceros efectúan transacciones jurídicas que descansan en la validez de dichos instrumentos.

Por otro lado, el Lcdo. Román Jiménez no actuó diligentemente en el cumplimiento de su deber al no haber notificado a la ODIN inmediatamente canceló las deficiencias arancelarias. Era su deber, una vez le fueron señaladas las faltas, subsanarlas y concertar una próxima reunión con dicha oficina para que le fueran inspeccionados sus protocolos nuevamente. Ningún notario puede asumir una actitud pasiva y descansar en que la ODIN lo contactará para verificar si se corrigen adecuadamente los señalamientos que dicha oficina efectúe, máxime cuando la imagen de la profesión y la suya propia está en tela de juicio.

Tomando en consideración todo lo antes expuesto, suspendemos al Lcdo. Rafael H. Román Jiménez de la práctica de la notaría por un término de treinta (30) días, contado a partir de la notificación de esta sentencia. Le imponemos el deber de notificar a todos sus clientes de la práctica de la notaría de su presente inhabilidad de continuar representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión de

la notaría a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días, contado a partir de la notificación de esta sentencia del cumplimiento de estos deberes.

Se ordena al Alguacil General de este Tribunal que proceda a incautarse de la obra notarial y del sello notarial del notario suspendido, debiendo entregarlos a la Directora de la Oficina de Inspección de Notarías para el trámite correspondiente.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

Rafael H. Román Jiménez                TS-9606

SENTENCIA

San Juan, Puerto Rico, a 30 de abril de 2004.

En vista de lo expuesto en la Opinión Per Curiam que antecede y que se hace formar parte de esta sentencia, suspendemos al Lcdo. Rafael H. Román Jiménez de la práctica de la notaría por un término de treinta (30) días, contado a partir de la notificación de esta sentencia. Le imponemos el deber de notificar a todos sus clientes de la práctica de la notaría de su presente inhabilidad de continuar representándolos, les devuelva cualesquiera honorarios recibidos por trabajos no realizados, e informe oportunamente de su suspensión de la notaría a los distintos foros judiciales y administrativos del país. Deberá, además, certificarnos dentro del término de treinta (30) días, contado a partir de la notificación de esta sentencia del cumplimiento de estos deberes.

Se ordena al Alguacil General de este Tribunal que proceda a incautarse de la obra notarial y del sello notarial del notario suspendido, debiendo entregarlos a la Directora de la Oficina de Inspección de Notarías para el trámite correspondiente.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri no intervino.


                              Patricia Otón Olivieri
                         Secretaria del Tribunal Supremo