EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Jesús F. Vázquez Margenat <br> (TS-5,491) | 2020 TSPR 94 <br><br> 205 DPR _____ |

Número del Caso:  CP-2019-10


Fecha:  18 de agosto de 2020


Oficina del Procurador General:

      Lcda. Lorena Cortés Rivera
      Procuradora General Interina

      Lcda. Noemí Rivera De León
      Procuradora General Auxiliar


Abogada del Querellado:

      Lcda. Daisy Calcaño López


Materia:  La suspensión será efectiva el 2 de septiembre de 2020, fecha en que se le notificó al abogado de su suspensión inmediata.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jesús F. Vázquez Margenat      CP-2019-0010      Conducta
(TS-5,491)      Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 18 de agosto de 2020.

> "La notaría es faena de tiempo y paciente integración de todos los elementos documentales, que sufre en su calidad con la festinación y la atracción de los atrechos fáciles". <u>Empire Life Ins. Co. v. Registrador</u>, 105 DPR 136, 139 (1976).

## I

El Lcdo. Jesús F. Vázquez Margenat (licenciado Vázquez Margenat) fue admitido al ejercicio de la abogacía el 31 de mayo de 1977 y a la práctica de la notaría el 5 de julio del mismo año.

El 28 de agosto de 2017 el Tribunal de Apelaciones dictó una Sentencia en el caso <u>Pueblo v. Rafael González Ferreira</u>, Caso Núm. KLAN201501947, mediante la cual se

confirmó el dictamen condenatorio del Sr. Rafael González Ferreira (señor González Ferreira o acusado). [1]

Luego de analizar la transcripción de la prueba oral donde el licenciado Vázquez Margenat figuró como testigo del Pueblo, el foro apelativo intermedio ordenó elevar los autos ante este Tribunal y la Oficina de Inspección de Notarías (ODIN). El referido, acogido como Queja AB-2017-281, procuraba la evaluación del proceder del letrado al autenticar las firmas de los señores José R. Jarabo Álvarez (señor Jarabo Álvarez o afectado) y el señor González Ferreira en un Certificado de título de un vehículo de motor (Certificado de título) para el traspaso del mismo, cuando ninguno de los dos acudió a su oficina.

El licenciado Vázquez Margenat contestó la Queja y admitió que, en el testimonio núm. 18332 de 10 de diciembre de 2012, afirmó falsamente que presenció las firmas del afectado y del acusado en el Certificado de título. Es decir, el letrado reconoció que completó el testimonio con la información que recibió de un tercero, un gestor de licencias de vehículos de motor, sin entrevistar a las partes ni haberle tomado sus firmas. Además, sin pretender justificarse o excusarse, alegó que confió que los señores Jarabo Álvarez y González Ferreira firmaron el documento delante del gestor, asunto que durante el juicio resultó ser falso.

Por todo lo anterior, y en cumplimiento con una orden de este Foro, el Procurador General rindió un Informe y concluyó que,

---

[1] El Sr. Rafael González Ferreira se halló culpable por violar el Art. 217 del Código Penal de 2012, 33 LPRA sec. 5287 (posesión y traspaso de documentos falsificados) y por infringir el Art. 25 de la Ley para la Protección de Propiedad Vehicular, 9 LPRA sec. 3224 (entrada de información falsa a un sistema de computadoras).

por los hechos que el licenciado Vázquez Margenat admitió, éste infringió los Arts. 2, 12 y 56 de la Ley Notarial de Puerto Rico,[2] las Reglas 65 a la 67 del Reglamento Notarial de Puerto Rico[3] y los Cánones 18, 35 y 38 del Código de Ética Profesional.[4] Consecuentemente, tras una evaluación de la réplica presentada por el letrado, le ordenamos al Procurador General que presentara la Querella y referimos el asunto a la ODIN para la correspondiente investigación y presentación del Informe.

Previo a que el Procurador General presentara la Querella, la ODIN cumplió con nuestra orden al presentar un *Informe especial y moción en solicitud urgente de incautación preventiva de obra protocolar.* Allí, la ODIN señaló que el licenciado Vázquez Margenat solo entregó 12 volúmenes del *Libro de registro de testimonios*, de los cuales surgía que éste tenía una deuda arancelaria preliminar ascendente a $235,762 correspondientes a 49,022 asientos autorizados y no registrados. De 2,839 asientos registrados, se reflejó una deuda arancelaria de $12,652 a favor de la Sociedad para la Asistencia Legal. Además de lo anterior, el inspector notarial halló cientos de asientos en blanco o cuyo contenido estaba incompleto. Del mismo modo, encontró asientos en los cuales se adhirió el recibo del arancel cancelado en lugar del sello original.[5] Ante la seriedad del asunto, ordenamos la

---

[2] 4 LPRA secs. 2002, 2023 y 2091.

[3] 4 LPRA Ap. XXIV.

[4] 4 LPRA Ap. IX.

[5] *Informe especial y moción en solicitud urgente de incautación preventiva de obra protocolar, pág. 2.*

incautación preventiva de la obra protocolar y el sello notarial del letrado.

Posteriormente, la ODIN presentó el *Informe* en el que recomendó que, por la admisión del licenciado Vázquez Margenat sobre lo acontecido con el testimonio núm. 18332 de 10 de diciembre de 2012, éste debía ser suspendido de la profesión de manera inmediata e indefinida. Atendido este asunto, le ordenamos al letrado que se expresara al respecto y, al comparecer, expuso que desde el inicio aceptó su error, que no hubo ánimo de lucro y reconocía las consecuencias éticas de su proceder. No obstante, entendía necesario que este Tribunal considerara el uso y costumbre aceptado en el negocio de la gestoría de licencias de vehículos de motor y su relación con el notariado. El letrado expuso que, en este tipo de negocio, **"el gestor acude a la oficina del notario para [que] efectúe el traspaso a nombre de tercero, y éste firma ante él. Es la firma del gestor la que autentica el notario y no la del comprador y el vendedor".**[6]

Ahora bien, antes de que el Procurador General presentara la Querella, por meses y a causa de la incautación preventiva, la ODIN estuvo monitoreando el proceso de restauración de la obra notarial del licenciado Vázquez Margenat. Así, mientras el Procurador General investigaba para presentar la Querella, simultáneamente el letrado trabajaba sobre la subsanación de la obra protocolar y la ODIN nos advertía periódicamente el progreso del letrado. Sin embargo, a pesar de que la ODIN reconoció el esfuerzo realizado por el licenciado Vázquez Margenat, a más de

---

[6] *Contestación a "Informe director ejecutivo de la Oficina de Inspección de Notarías",* págs.7.

un año de haber incautado la obra notarial, el letrado no ha culminado el proceso de subsanación. Según la ODIN, actualmente el abogado adeuda $42,416 en aranceles y tiene pendiente 1,615 asientos por inscribir **en múltiples volúmenes** del *Libro de registro de testimonios*.[7]

Por su parte, el 22 de noviembre de 2019, el Procurador General presentó la Querella y allí reiteró las infracciones iniciales, a saber: los Artículos 2, 12 y 56 de la Ley Notarial, *supra*, las Reglas 65 a la 67 del Reglamento Notarial, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. El licenciado Vázquez Margenat replicó la Querella y, en esencia, se allanó a los cargos imputados. No obstante, para justificar que su práctica cumplió con el estatuto y con la reglamentación que gobiernan el negocio de la gestoría de licencias de vehículos de motor, expresó lo siguiente:

> Es importante señalar que los documentos fueron presentados ante el promovido a través de un gestor de licencias. La práctica del compareciente era trabajo notarial para gestores en su mayoría, no era un empleado de una gestoría y nunca trabajó en los quioscos aledaños al CESCO. El procedimiento normal consiste en que el gestor presente ante el notario las identificaciones de los contratantes y una declaración jurada, de no presentarla, el notario la redacta, en la cual consta la información del comprador, vendedor o solicitante de otro asunto distinto al traspaso. Incluye asimismo, la descripción del vehículo objeto del traspaso o puede tratarse de otro tipo de transacción o petición; entre otras, duplicados de licencias de vehículos, de título, reemplazo de marbete o piezas y gravámenes. El uso y costumbre conform[e] a la Ley y Reglamentos, el que sus funciones[,] el gestor acuda a la oficina del notario para efectuar el traspaso [a] nombre de tercero(s) y éste firma ante el notario. Es la firma del gestor la que aut[e]ntica el notario y no la del comprador y el vendedor. Nos llama la atención c[ó]mo esta práctica que

---

[7] La Oficina de Inspección de Notarías (ODIN) actualizó el estado de la obra notarial incautada mediante *Segunda Moción Informativa expresando el estado actual de la obra notarial incautada y otros pormenores* presentada el 26 de febrero de 2020.

cumple con las leyes y reglamentos vigentes, puede incidir en la responsabilidad ética del Notario o Notaria y exponerlo a procedimientos disciplinarios.

Lo cierto es que el traspaso ante el Lcdo. Vázquez no se completó, ya que el documento del gestor, título del vehículo, intencionalmente no se validó al éste percatarse que era necesario redactar una declaración jurada en la cual se incluyeran los nombres de las partes contratantes, la descripción del vehículo objeto de la transacción y la juramentación del documento por parte del gestor, para así poder autenticar la firma de éste. Inexplicablemente el traspaso lo hizo el [CESCO] de Carolina a pesar de mediar un documento incompleto o defectuoso. Posterior a ello, se radicaron los cargos criminales contra el señor Rafael González Ferreira.[8]

## II

Como principio del derecho notarial, todo notario está inexorablemente vinculado al estricto cumplimiento de la Ley Notarial de Puerto Rico,[9] el Reglamento Notarial de Puerto Rico y a los Cánones del Código de Ética Profesional.[10] En el cumplimiento de dicha función, el notario representa la fe pública y la ley para todas las partes.[11] Como custodio de la fe pública notarial, espina dorsal del notariado, el notario tiene que ser cuidadoso y debe desempeñar su ministerio con esmero, diligencia y estricto celo profesional.[12]

Como sabemos, cuando el notario da fe implica que ese documento cumple con todas las formalidades de ley, formal y sustantivamente, que el documento es legal y verdadero, y que se

---

[8] *Contestación a Querella*, págs. 9-10.

[9] Ley Núm. 75 de 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*

[10] In re Vázquez Pardo, 185 DPR 1031, 1040 (2012).

[11] Íd.

[12] Íd., pág. 1042.

trata de una transacción válida y legítima.[13] En el pasado hemos expresado que "la dación de fe brinda la confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobado con sus sentidos o ejecutados por él".[14] La investidura que conlleva la fe pública notarial va acompañada de una presunción controvertible a los actos que ve y oye el notario de que lo allí consignado es legal y verdadero.[15] Es precisamente esta presunción de legalidad, veracidad y legitimidad lo que le brinda certeza, garantía y eficacia al documento notarial.[16]

El Art. 2 de la Ley Notarial, *supra*, consagra el principio de la fe pública notarial. Este artículo dispone que "la fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función, personalmente ejecute o compruebe, y también respecto a la forma, lugar, día y hora del otorgamiento". Así pues, la fe pública notarial es de tan alta importancia que no es necesario que el notario falte a la verdad intencionalmente para que incurra en una violación a ella.[17]

Ahora bien, a través de "un testimonio o declaración de autenticidad un notario puede dar fe de que, en determinada fecha, se firmó un documento en su presencia y que esa persona es quien

---

[13] In re Vázquez Pardo, supra, pág. 1041.

[14] In re Arocho Cruz, 198 DPR 360, 365-66 (2017) citando a In re Rivera Aponte, 169 DPR 738, 741-742 (2006); In re Toro Imbernón, 194 DPR 499, 505 (2016).

[15] In re Vázquez Pardo, supra.

[16] Íd., págs. 1041-1042.

[17] Íd., pág. 1041.

dice ser".[18] Además, "el notario hará constar tanto en el testimonio, como en el Registro, su conocimiento personal del firmante o en su defecto la utilización de los medios supletorios que provee [el Art. 17 de la Ley Notarial, 4 LPRA sec. 2035]".[19]

Cónsono con lo anterior, y por cuanto las declaraciones juradas son testimonios de legitimación de la firma, los notarios no pueden dar fe notarial en un documento en el cual la persona que pretende la otorgación no compareció personalmente.[20] De manera que el notario que autoriza una declaración jurada sin la presencia del firmante transgrede la fe pública notarial y lesiona la confianza depositada en el sistema de autenticidad documental.[21] A su vez, esto constituye la certificación de un hecho falso que no solo contraviene la Ley Notarial, *supra,* y el Reglamento Notarial, *supra*, sino además, quebranta los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

Según el Canon 18, los profesionales del Derecho deben ejercer sus funciones de manera competente, cuidadosa y diligente.[22] Infringe este canon el notario que toma livianamente el celo de la custodia de la fe pública notarial al no ejercer la profesión con el cuidado y la prudencia que ésta requiere.[23] Del

---

[18] In re Arocho Cruz, supra, pág. 366; Art. 56(1) de la Ley Notarial, *supra*; Reglas 65, 66 y 67 del Reglamento Notarial, 4 LPRA Ap. XXIV. Véanse In re Vargas Velázquez, 193 DPR 681, 689 (2015); In re Llanis Menéndez I, 175 DPR 22, 25 (2008).

[19] In re Arocho Cruz, supra, 366; Art. 56(1) de la Ley Notarial, *supra*; Reglas 65, 66 y 67 del Reglamento Notarial, 4 LPRA Ap. XXIV.

[20] In re Arocho Cruz, supra, pág. 366.

[21] Id.

[22] 4 LPRA Ap. IX.

[23] In re Arocho Cruz, supra, pág. 367.

mismo modo, "la gestión notarial es de carácter personal, indivisible e indelegable, de completa responsabilidad del notario autorizante".[24] Bajo ningún concepto, un notario puede delegar la fe pública notarial a un tercero, ni debe empoderar lo que por autoridad legal solo a él le fue entregado.

Por otro lado, el Canon 35 exige que los notarios conduzcan su profesión con honestidad y "ajustarse a la sinceridad de los hechos […] al redactar afidávits y otros documentos[…]".[25] Un notario infringe el Art. 2 de la Ley Notarial, *supra*, y el Canon 35 sin importar si actuó de manera intencional o no.[26] Es decir, no es defensa la ausencia de haber obrado de mala fe, deliberadamente o sin la intención de engañar como tampoco lo es que no se haya causado daño a un tercero.[27]

En línea con lo señalado, el Art. 12 de la Ley Notarial, *supra*, regula el contenido y la presentación de los índices sobre actividades notariales. Entre varios asuntos, de estos informes tienen que surgir las fechas y los nombres de los firmantes de las declaraciones juradas autorizadas por el notario. La presentación de los índices sobre actividades notariales "garantizan la certeza de los documentos en los que intervienen los notarios, y evitan el riesgo de manipulación y fraude".[28] De lo anterior podemos colegir que un notario que asegure que una persona figuró como

---

[24] In re Torres Olmeda, 145 DPR 384, 391-392 (1998) citando a In re Laboy, 113 DPR 476 (1982).

[25] 4 LPRA Ap. IX.

[26] In re Vázquez Pardo, supra, págs. 1046-1047.

[27] Íd.

[28] In re Santiago Ortiz, 191 DPR 950, 961 (2014).

compareciente en una declaración jurada en el índice de actividad notarial presentado sin ser cierto, quebranta los Arts. 2, 12 y 56 de la Ley Notarial, las Reglas 65, 66, 67 del Reglamento Notarial y el Canon 35.

Respecto al Canon 38, éste obliga a los abogados a preservar la dignidad y el honor de la profesión. El esfuerzo para cumplir con ese cometido conlleva incluso sacrificios personales.[29] No exalta la profesión legal el notario que no desempeñe con cautela y el celo que demanda la función pública del notariado.

Cabe mencionar que somos más rigurosos cuando se trata de violaciones sobre la inobservancia de la comparecencia personal y el conocimiento de los firmantes en las declaraciones juradas de traspasos de vehículos de motor.[30] Pero, es la primera vez que nos argumentan la relación entre el negocio de la gestoría de licencias de vehículos de motor y un notario.

Es un principio básico de hermenéutica que "el uso y la costumbre no deben usarse como fuente de derecho cuando hay leyes aplicables al caso".[31] En ese contexto resulta meritorio detenernos

---

[29] 4 LPRA Ap. IX.

[30] In re Machargo Barreras, 161 DPR 364, 370 (2004). En esa oportunidad indicamos que nuestra rigurosidad se debía a la alta incidencia de traspasos de vehículo de motor fraudulentos. Allí, repasamos lo siguiente:

> In re Nieves Rivera, 124 DPR 803 (1989) (en este caso se suspendió indefinidamente al señor Nieves Rivera del ejercicio de la abogacía y notaría por reiteradamente dar fe de conocimiento y de que los comparecientes firmaban el documento ante él —lo que no era cierto— haciendo viable el traspaso de vehículos hurtados; los "otorgantes" nunca comparecieron ante él y las firmas fueron falsificadas); In re González González, 119 DPR 496 (1987) (se suspendió al señor González González del ejercicio de la notaría por el período de un año por otorgar un traspaso de licencia de vehículo de motor sin que una de las partes compareciera ante él).

[31] Puerto Rico Horse Owners Association (PRHOA) v. Confederación Hípica de Puerto Rico, 202 DPR 509, 522 (2019); 31 LPRA sec. 7.

y analizar la figura del gestor regulada por la Ley Núm. 22-2000, conocida como la *Ley de Vehículos y Tránsito de Puerto Rico*, 9 LPRA sec. 5001 *et seq.* (Ley 22).

Conforme al Art. 1.48 de la Ley 22, *supra*[32] un gestor de licencias es aquella "persona autorizada por el Secretario [del Departamento de Transportación y Obras Públicas de Puerto Rico[33] (Secretario del DTOP)] para dedicarse al negocio de **gestionar o tramitar por otro**, con la autorización de éste, **la obtención de cualquier tipo de licencia o su renovación** relacionada con vehículos de motor, y por cuyos servicios podrá recibir el pago de honorarios." [34] (Énfasis nuestro).

Asimismo, el Art. 3.18 de la Ley 22, *supra*, dispone que la persona interesada en ser gestor necesita una licencia y, para ello, requiere la aprobación de un examen que ofrece el Secretario del DTOP. El aspirante a gestor debe cumplir con los requisitos que dispone el Art. VI del *Reglamento para reglamentar los negocios de gestorías de licencias*, Reglamento Núm. 6272 de 2 de enero de 2001 (Reglamento 6272). Una vez aprobada y extendida la licencia de gestor, cuya vigencia es de dos años, éste tendrá una función limitada. Es decir, el gestor solo podrá "tramitar o gestionar por otro la obtención de cualquier tipo de licencia o su renovación relacionada a un vehículo de motor".[35] Acorde con el Art. XI del

---

[32] 9 LPRA sec. 5001(46).

[33] Art. 1.88 de la Ley 22, 9 LPRA sec. 5001(86).

[34] El *Reglamento para reglamentar los negocios de gestorías de licencias*, Reglamento Núm. 6272 de 2 de enero de 2001, pág. 3 (Reglamento 6272) adoptó la misma definición de gestor que estableció el Art. 1.48 de la Ley Núm. 22-2000, conocida como la Ley de Vehículo y Tránsito de Puerto Rico (Ley 22).

[35] Art. 1.48 de la Ley 22, 9 LPRA sec. 5001(46) y Art. VI Reglamento 6272.

Reglamento 6272, *supra*, la representación o transacción que realice el gestor por la persona que contrata sus servicios **únicamente** se ejecuta ante el Centro de Servicios al Conductor (CESCO).[36]

Nótese que, al evaluar el estatuto y el reglamento que gobierna la figura del gestor dentro del negocio de la gestoría, en ninguna de las partes discutidas se alude a que el gestor está investido por ley o regla alguna para representar a su cliente ante un notario. Lo mismo ocurre con el ordenamiento jurídico notarial, pues éste no permite que un notario de fe de una transacción sin que sus sentidos perciban a los verdaderos interesados en finiquitar un negocio jurídico. Esto es entregar la confianza y la presunción de legalidad que permea en la fe pública notarial.

Recalcamos, la fe pública notarial a la que el notario está investido "es de carácter personal, indivisible e indelegable, de completa responsabilidad del notario autorizante".[37] Acorde con lo anterior, y luego de una evaluación de la Ley 22, *supra*, del Reglamento 6272, *supra*, de la Ley Notarial, *supra*, y del Reglamento Notarial, *supra*, es forzoso concluir que **un notario no posee autoridad legal para delegar la fe pública notarial a un tercero.** Ninguno de los estatutos discutidos expresamente faculta a que un notario autentique la firma de un gestor que comparece ante él con una declaración jurada que lo autoriza a culminar el proceso de un traspaso de un vehículo de motor que el comprador y vendedor

[36] Reglamento 6272, supra, págs. 11-13.

[37] In re Torres Olmeda, supra.

del mismo pretendan finiquitar. Más aun, debido a que **las funciones del notariado y de la gestoría tienen una base legal, el argumento del uso y costumbre de que un gestor acuda a la oficina de un notario para efectuar un traspaso a nombre de un tercero <u>no tiene cabida en nuestro ordenamiento</u>**.[38]

Otro asunto de importancia que debemos insistir es que la inercia de los profesionales del Derecho en observar los requerimientos de la ODIN sobre el ejercicio de la notaría tiene el mismo efecto disruptivo que cuando se desatiende una orden directa de este Tribunal.[39] Como parte del trámite de la incautación preventiva de una obra notarial la ODIN examina que el notario haya cumplido con la inscripción de los testimonios en el *Libro de registros de testimonios* y que haya adherido y cancelado los aranceles correspondientes,[40] tal como exige el Art. 10 de la Ley Notarial, *supra*, 4 LPRA sec. 2021. Lamentablemente, la inobservancia de este deber tiene serias consecuencias,[41] entre éstas, "anulabilidad e ineficacia jurídica de estos documentos en perjuicio de los otorgantes o de terceros, defrauda el erario y podría resultar en la configuración del delito de apropiación ilegal".[42]

---

[38] <u>Puerto Rico Horse Owners Association (PRHOA) v. Confederación Hípica de Puerto Rico</u>, supra.

[39] <u>In re Troche Mercado</u>, 194 DPR 747, 751 (2016).

[40] Íd.

[41] <u>In re Troche Mercado</u>, supra, citando a <u>In re Salas Arana</u>, 170 DPR 202 (2007); <u>In re Amundaray Rivera</u>, 163 DPR 251 (2004); <u>In re Casiano Silva</u>, 145 DPR 343, 347 (1998); <u>In re Cardona Estelritz</u>, 137 DPR 453, 455 (1994).

[42] <u>In re Abendano Ezquerro</u>, 198 DPR 677, 683 (2017).

Así, en ocasión de que un abogado se resista en la subsanación de la obra notarial y, además, con dicha conducta quebrante la fe pública notarial al no adherir y cancelar los aranceles correspondientes, expresamos lo siguiente:

> Todo notario tiene la ineludible obligación de adherir y cancelar en cada documento o instrumento público que autorice y en las copias certificadas que de ellas expida los correspondientes sellos de aranceles notariales. *Se trata, pues, de un deber ministerial al que deberá darle cumplimiento estricto y que requiere que el arancel sea adherido al momento de su otorgamiento. Ello debido a que en estas copias certificadas que el notario expide, éste da fe de haber adherido y cancelado los referidos aranceles. Por lo tanto, al no hacerlo estaría dando fe de haber realizado un acto que realmente no efectuó, lo que constituye una falta extremadamente grave.*
> ........
> Además, incumplir con esta singular obligación expone al notario a que sea objeto de las más severas sanciones disciplinarias y conlleva que pueda ser responsable tanto en el ámbito civil como en el penal, dependiendo de las circunstancias en que ocurra tal violación. [43]

### III

Este es uno de esos casos en que la actuación es de tal gravedad que solo corresponde la suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría del miembro de la profesión legal. Si bien el letrado admitió sus actos, aseguró estar arrepentido y afirmó no haber tenido ánimo de lucro, lo cierto es que su conducta constituyó un incumplimiento craso a sus deberes como custodio de la fe pública notarial.

El licenciado Vázquez Margenat olvidó que su práctica era faena de tiempo y paciente integración de todos los elementos documentales y con su despliegue provocó que la calidad de su práctica sufriera mortalmente a causa de la festinación y de la

---

[43] In re Troche Mercado, supra, pág. 752 citando a In re Román Jiménez, 161 DPR 727, 731 (2004).

atracción de los atrechos fáciles.[44] Recordemos que el abogado actuó de manera incompetente, faltó a la honradez y no exaltó la profesión legal al dar fe pública notarial de que legitimó las firmas de los señores Jarabo Álvarez y González Ferreira en la Certificación de título para un traspaso de un vehículo de motor. Además, cedió la custodia de la fe pública notarial a un tercero cuando confió en la información vertida por un gestor respecto a las firmas de estos caballeros y certificó falsamente en el índice de actividad notarial correspondiente al mes de diciembre de 2012 que los señores Jarabo Álvarez y González Ferreira fueron los que otorgaron el testimonio núm. 18332. Por último, incumplió con subsanar las deficiencias de la obra notarial señaladas por la ODIN, entiéndase que no culminó las correspondientes entradas en el *Libro de registro de testimonios* y tampoco terminó de adherir ni cancelar los aranceles. Es incuestionable que la conducta desplegada por el licenciado Vázquez Margenat refleja una apatía, abandono e indiferencia a su responsabilidad en la práctica de la notaría.[45]

## IV

Por los fundamentos expuestos, suspendemos inmediata e indefinidamente del ejercicio de la abogacía y de la notaría al Lcdo. Jesús F. Vázquez Margenat.

En consecuencia, se le impone al señor Vázquez Margenat el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados. De igual forma, tendrá que

---

[44] Empire Life Ins. Co. v. Registrador, 105 DPR 136, 139 (1976).

[45] In re Troche Mercado, supra, pág. 752.

informar oportunamente de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún caso pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, en el término de treinta días, contados a partir de la notificación de la presente Opinión "per curiam" y Sentencia.

Se le apercibe al señor Vázquez Margenat que la presente acción disciplinaria no le exime de tener que subsanar, a sus expensas, las deficiencias señaladas por ODIN en su obra notarial. Esa obligación subsiste y su desatención le expone al correspondiente procedimiento de desacato. Por lo tanto, le concedemos al señor Vázquez Margenat un término de sesenta días para que subsane las deficiencias arancelarias de su obra notarial y que contrate, a su costo, a un notario para corregir las deficiencias señaladas. Consecuentemente, su fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados por el notario Vázquez Margenat durante el periodo en que la misma estuvo vigente. Asimismo, respecto a la deuda arancelaria, se refiere este asunto al Departamento de Justicia para la acción correspondiente.

Notifíquese esta Opinión *Per Curiam* y Sentencia mediante correo electrónico y por teléfono.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Jesús F. Vázquez Margenat             CP-2019-0010        Conducta
        (TS-5,491)                                        Profesional

***SENTENCIA***

En San Juan, Puerto Rico, a 18 de agosto de 2020.

Por los fundamentos expuestos, suspendemos inmediata e indefinidamente del ejercicio de la abogacía y de la notaría al Lcdo. Jesús F. Vázquez Margenat.

En consecuencia, se le impone al señor Vázquez Margenat el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándolos y devolverles cualesquiera honorarios recibidos por trabajos no realizados. De igual forma, tendrá que informar oportunamente de su suspensión a cualquier sala del Tribunal General de Justicia o foro administrativo en el que tenga algún caso pendiente. Deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, en el término de treinta días, contados a partir de la notificación de la presente Opinión "Per Curiam" y Sentencia.

Se le apercibe al señor Vázquez Margenat que la presente acción disciplinaria no le exime de tener que subsanar, a sus expensas, las deficiencias señaladas por ODIN en su obra notarial. Esa obligación subsiste y su desatención le expone al correspondiente procedimiento de desacato. Por lo tanto, le concedemos al señor Vázquez Margenat un término de sesenta días para que subsane las deficiencias arancelarias de su obra notarial y que

contrate, a su costo, a un notario para corregir las deficiencias señaladas. Consecuentemente, su fianza notarial queda automáticamente cancelada. La fianza se considerará buena y válida por tres años después de su terminación en cuanto a los actos realizados por el notario Vázquez Margenat durante el periodo en que la misma estuvo vigente. Asimismo, respecto a la deuda arancelaria, se refiere este asunto al Departamento de Justicia para la acción correspondiente.

Notifíquese esta Opinión *Per Curiam* y Sentencia mediante correo electrónico y por teléfono.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo