EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Julio C. Villalona Viera<br>(TS-15,278) | 2021 TSPR 27<br><br>206 DPR _____ |

Número del Caso: AB-2019-116

Fecha: 26 de febrero de 2021

Oficina del Procurador General:

     Lcda. Noemí Rivera De León
     Procuradora General Auxiliar

Oficina de Inspección de Notarías:

     Lcdo. Manuel E. Ávila De Jesús
     Director

Abogados del promovido:

     Lcda. Daisy Calcaño López
     Lcdo. Raúl Rodríguez Quiles
     Lcdo. Donald Milán Guindín

Materia:  La suspensión será efectiva el 3 de marzo de 2021, fecha en que se le notificó al abogado de su suspensión inmediata.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Julio C. Villalona Viera<br>(TS-15,278) | AB-2019-0116 |

**PER CURIAM**

En San Juan, Puerto Rico, a 26 de febrero de 2021.

Una vez más nos corresponde ejercer nuestro poder disciplinario para evaluar la conducta del Lcdo. Julio Villalona Viera (licenciado Villalona Viera), y determinar si, en el ejercicio de su función notarial, infringió los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*, los Arts. 2, 12 y 56 de la Ley Notarial de Puerto Rico, *infra*, y las Reglas 65, 66 y 67 del Reglamento Notarial, *infra*. Por responder en la afirmativa, ordenamos la suspensión inmediata del letrado del ejercicio de la abogacía por un término de seis meses, y del ejercicio de la notaría indefinidamente.

Procedemos a realizar un recuento de los hechos pertinentes al asunto ante nuestra consideración.

**I**

El licenciado Villalona Viera fue admitido al ejercicio de la abogacía el 16 de febrero de 2005 y a la práctica de la notaría el 28 de junio del mismo año.

El 8 de mayo de 2019, la Hon. Berthaida Seijo Ortiz, Jueza del Tribunal de Primera Instancia, Sala Superior de

Carolina, adjudicó la evidencia presentada durante la celebración de una vista en alzada de Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6, en el caso El Pueblo de Puerto Rico v. Wilfredo Gracia Delgado y otros (Caso Núm. FMI2019-0020).[1] En lo pertinente al asunto ante nosotros, la Jueza Seijo Ortiz emitió una *Resolución* en la que determinó que, conforme a la prueba testimonial y documental presentada, el título del vehículo que fue objeto de apropiación ilegal fue notarizado por el licenciado Villalona Viera. Asimismo, razonó que, a pesar de ser un hecho falso, el notario certificó bajo juramento que la Sra. Sonia Cabrera Cancel y el Sr. Julio Soto Díaz comparecieron y firmaron un Certificado de título de vehículo de motor (Certificado de título) para el traspaso de este vehículo. Ante la realidad señalada y en cumplimiento con los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, la Jueza Seijo Ortiz refirió el caso ante este Tribunal para la evaluación de la conducta del licenciado Villalona Viera como notario.

---

[1] Se inició un proceso criminal en contra del Sr. Wilfredo Gracia Delgado por violar el Art. 18(4) de la Ley para la Protección de Propiedad Vehicular, 9 LPRA sec. 3224 y los Arts. 212 (Falsedad ideológica) y 217 (Posesión y traspaso de documentos falsificados) del Código Penal de 2012. Por otra parte, también iniciaron un proceso criminal en contra del Sr. Raúl A. Ayala Santana bajo el Art. 202(b) (Fraude); el Art. 212 (Falsedad ideológica) y el Art. 217 (Posesión y traspaso de documentos falsificados) del Código Penal de 2012.

Durante la investigación de la división de vehículos hurtados, según surgió de las declaraciones juradas presentadas y la entrevista del Lcdo. Julio Villalona Viera ante la Agte. Daisy Torres Muñiz, quedó establecida la forma y manera del otorgamiento del referido afidávit.

Según surge de la evidencia presentada, ante el foro primario, durante una entrevista realizada por la Agente Daisy Torres Muñiz de la División de Vehículos Hurtados de Carolina, el licenciado Villalona Viera admitió que el 4 de mayo de 2018, el Sr. Wilfredo Gracia Delgado, como gestor de licencias de vehículos de motor, se presentó en su oficina con un Certificado de título que contenía dos firmas y las copias de la licencia de conducir de las partes para llevar a cabo un traspaso del título del vehículo. Además, mencionó que el señor Gracia Delgado le aseguró que no tenía que preocuparse, ya que las partes pasaron antes por su oficina. Luego, el notario procedió a autorizar el Testimonio Núm. 26,596 en el que identificó al señor Soto Díaz y a la señora Cabrera Cancel mediante las copias de sus respectivas licencias de conducir y formalizó el traspaso del título del vehículo.

Así las cosas, determinamos acoger el referido del foro primario como una Queja (AB-2019-116) para evaluar la conducta del licenciado Villalona Viera al autenticar las firmas de un Certificado de título para el traspaso de un vehículo de motor mediante un testimonio, sin contar con la presencia de ninguna de las partes otorgantes, limitándose a identificarlas por medio de las copias de sus licencias de conducir. Así, al amparo de la Regla 14(c) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, este Tribunal le otorgó un término de diez días al letrado para presentar su contestación a la queja.

En cumplimiento con lo requerido, el 3 de julio de 2019, el licenciado Villalona Viera compareció y resaltó que, durante ocho años, su práctica de la notaria ha estado enfocada en la gestoría de licencias de vehículos de motor y los concesionarios de vehículos de motor. Además, admitió que fue el notario que autorizó el traspaso del vehículo que fue objeto del caso criminal El Pueblo de Puerto Rico v. Wilfredo Gracia Delgado y otros (Caso Núm. FMI2019-0020) que motivó la queja. A esos efectos, explicó que:

> **Es importante señalar que los documentos fueron presentados ante el [licenciado Villalona Viera] a través de un gestor de licencias. La práctica del [licenciado Villalona Viera] era trabajo notarial para gestores en su mayoría. Es en el documento de autorización que firma el comprador y el vendedor ante el gestor con el cual lo autorizan a acudir ante el notario para que efectúe el traspaso, donde ambos firman y cumplimenta el notario cuando el gestor firma ante él.**
>
> **Es el uso y costumbre que en sus funciones el gestor acuda a la oficina del notario para que efectúe el traspaso a nombre de tercero, y éste firma ante él. Es la firma del gestor la que autentica el notario y no la del comprador y el vendedor.** Nos llama la atención como esta práctica que es el uso y costumbre puede incidir en la responsabilidad ética del Notario o Notaria y exponerlo a procedimientos disciplinarios, como el presente. (Énfasis nuestro).[2]

Cónsono con lo anterior, el licenciado Villalona Viera aceptó su responsabilidad profesional y explicó que actuó conforme al uso y costumbre de los notarios que se dedican a la práctica de los traspasos de vehículo de motor por medio de gestores.

---

[2] *Contestación a la Queja*, pág. 3.

Finalmente, solicitó que, al momento de evaluar su conducta, consideremos que: no había incurrido en infracciones disciplinarias anteriores en la práctica de la abogacía ni la notaría; no hubo ánimo de lucro; expresó arrepentimiento y pidió disculpas; admitió su responsabilidad sobre los hechos imputados desde el inicio y finalmente, resaltó que la situación le ha servido de experiencia y aprendizaje a pesar de la dificultad que representaría perder la notaría como fuente de ingreso.

En vista de la información sometida ante este Tribunal, el 31 de enero de 2020 referimos el asunto a la Oficina de Inspección de Notarías (ODIN) y a la Oficina del Procurador General de Puerto Rico (Oficina del Procurador General) para la investigación e informe correspondiente.

Así las cosas, el 19 de febrero de 2020, el Director de la ODIN, el Lcdo. Manuel E. Ávila De Jesús, presentó su Informe. En cuanto a la actuación del notario, señaló que "es un hecho admitido y probado que el [licenciado Villalona Viera] autorizó el Testimonio Núm. 26,596 de Traspaso de vehículo de motor […] que comprometió su fe pública notarial al firmar que legitimó las firmas de unas personas que no comparecieron ante él". Concluyó que la referida conducta constituyó una violación al principio de la fe pública notarial que establece el Art. 2 de la Ley Notarial de Puerto Rico, *supra*. A su vez, expresó que el licenciado Villalona Viera infringió los Artículos 56 y 57

de la Ley Notarial de Puerto Rico, *infra*, y las Reglas 65 y 67 del Reglamento Notarial, *infra*, al dar fe de hechos falsos, tales como declarar que identificó a los otorgantes mediante sus licencias de conducir y que estos habían firmado el documento ante él.

En cuanto a la contestación del notario a los efectos de que se limitó a legalizar la firma del gestor, la ODIN resaltó que surgió una contradicción entre lo ocurrido y la información que el licenciado Villalona Viera consignó en el Libro de Registro de Testimonios y el Informe de Actividad Notarial de mayo de 2018 al mencionar como declarantes a la señora Cabrera Cancel y el señor Soto Díaz. En consecuencia, puntualizó que, con su conducta, el licenciado Villalona Viera incumplió los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*, al quebrantar la fe pública notarial y faltar a su deber de diligencia y honradez al realizar una afirmación de un hecho falso.[3] De esta forma, la ODIN recomendó la suspensión del ejercicio de la notaría por un término de tres meses.

---

[3] Por otra parte, el Informe mencionó que en In re Flores Martínez, 199 DPR 691 (2018), un letrado incurrió en una conducta similar al legitimar firmas de traspasos de vehículos de motor por medio de la gestoría regulada por el Departamento de Transportación y Obras Públicas (DTOP). Resaltó que, en el referido caso, ordenamos la suspensión de la abogacía por tres meses y la notaría inmediata e indefinidamente.

Al evaluar la conducta del licenciado Villalona Viera para la aplicación de la sanción disciplinaria, ODIN consideró lo siguiente: que es el primer procedimiento disciplinario sobre su desempeño como notario; que no causó dilación indebida durante el procedimiento disciplinario; que admitió su error y expresó arrepentimiento. Finalmente, ODIN recomendó la suspensión del ejercicio de la notaría por un término de tres meses por violar los Arts. 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico, *infra*, las Reglas 65 y 67 del Reglamento Notarial, *infra*, y, en consecuencia, infringir los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*.

Posteriormente, el 18 de septiembre de 2020, la Oficina del Procurador General presentó su Informe. Afirmó que no existe controversia en cuanto a que el licenciado Villalona Viera fue el notario que autorizó el traspaso del vehículo de motor en cuestión y certificó falsamente, bajo juramento, que las partes comparecieron ante él y firmaron en su presencia al dorso del Certificado de título. En consecuencia, la Oficina del Procurador General resolvió que el licenciado Villalona Viera incumplió con los Arts. 2, 12 y 56 de la Ley Notarial de Puerto Rico, *infra*, las Reglas 65, 66 y 67 del Reglamento Notarial, *infra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*. Conforme a ello, precisó en su recomendación que:

> En este caso, no existen controversias de hechos y, por ende, solo resta determinar, a base del expediente, y sin la necesidad del inicio de un procedimiento disciplinario en todo su rigor, el tipo de sanción que amerita la conducta del **[licenciado Villalona Viera]. De este ilustre foro entender que los hechos no controvertidos en este caso no ameritan la misma sanción impuesta en el caso de [In re Vázquez Margenat, 2020 TSPR 94, 204 DPR __ (2020)],[4] recomendaríamos el inicio de un procedimiento disciplinario.** (Énfasis nuestro).[5]

---

[4] En cuanto a la evaluación de la sanción sobre la conducta incurrida, la Oficina del Procurador General expuso que recientemente en In re Vázquez Margenat, 2020 TSPR 94, 204 DPR __ (2020), este Tribunal consideró la conducta de un abogado que legitimó unas firmas en un Certificado de título para el traspaso de un vehículo de motor sin contar con la presencia de las partes. Añadió que, por la referida conducta, ordenamos la suspensión indefinida del ejercicio de la abogacía y la notaría del letrado por infringir los Arts. 2, 12 y 56 de la Ley Notarial de Puerto Rico, *infra*, las Reglas 65 a la 67 del Reglamento Notarial de Puerto Rico, *infra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *infra*.

De otra parte, la Oficina del Procurador General consideró como atenuantes que, el licenciado Villalona Viera se enfrentaba a su primera falta en los quince años que lleva ejerciendo la profesión; que no hubo ánimo de lucro; que expresó sus disculpas

El 17 de noviembre de 2020, el licenciado Villalona Viera presentó su *Contestación a Informe de la Oficina del Director de Inspección de Notarías*. Posteriormente, el 23 de noviembre de 2020, remitió la *Contestación al Informe del Procurador General*. En ambos escritos, el notario reafirmó los planteamientos esbozados en su contestación a la queja.

Examinados los documentos pertinentes, y en vista de que en el presente caso no existe una controversia sobre los hechos esenciales, resolvemos sin trámite ulterior.[6]

## II

**Incumplimiento del principio de la fe pública notarial instituido en el Art. 2 de la Ley Notarial de Puerto Rico**

---

por la conducta incurrida y, además, que admitió su error por actuar conforme al uso y costumbre.

[5] *Informe del Procurador General*, pág. 13.

[6] Anteriormente, hemos expresado que el debido proceso de ley se salvaguarda siempre que se le provea al abogado la oportunidad de responder y defenderse de las teorías que fundamenten los cargos imputados y notificados adecuadamente. *Íd.*, pág. 825; *In re* Pérez Riveiro, *supra*, pág. 200. Cónsono con lo anterior, la Regla 14 (e) del Reglamento del Tribunal Supremo, *supra*, dispone que:

> **Una vez el Tribunal reciba la recomendación del Procurador o Procuradora General o del Director o Directora de la Oficina de Inspección de Notarías, podrá** ordenar el archivo y sobreseimiento de la queja, ordenar que se amplíe la investigación de la queja o **someter el asunto a uno de sus Jueces o Juezas para la determinación de causa, quien informará su criterio y recomendaciones al Pleno. El Tribunal podrá imponer las sanciones que correspondan sin necesidad de trámites ulteriores cuando surjan de la propia contestación hechos que lo justifiquen.** Luego de completado el trámite anterior, el Tribunal podrá ordenar al Procurador o Procuradora General que presente la querella correspondiente. (Énfasis nuestro).

Advertimos que después de la presentación del Informe de la Oficina del Procurador General y el Informe de la ODIN, otorgamos un término para que el licenciado Villalona Viera respondiera. Así, contando con su comparecencia, estando en poder de resolver, procedemos a hacerlo sin trámite ulterior. Véase *In re Arocho Cruz*, 198 DPR 360, 365 (2017); *In re Sánchez Ramos*, 174 DPR 453, 460 (2008); *In re Davison Lampón,* 159 DPR 448, 455 (2003).

Como parte de nuestro poder inherente para regular la profesión de la abogacía, nos compete asegurarnos de que los miembros admitidos al ejercicio de la profesión legal, así como la notaría, ejerzan sus funciones de manera responsable, competente y diligente. En cuanto al notario se refiere, este debe ejercer su función con extremo cuidado, esmero y celo profesional, ya que está obligado a cumplir estrictamente con la Ley Notarial de Puerto Rico (Ley Notarial), Ley Núm. 75 del 2 de julio de 1987, 4 LPRA sec. 2001 *et seq.*, el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV y los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX.[7] El incumplimiento con tales preceptos normativos lo expone a sanciones disciplinarias.[8]

El Artículo 2 de la Ley Notarial, 4 LPRA sec. 2002, consagra el principio de la fe pública notarial y dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente

---

[7] *In re Sánchez Reyes*, 2020 TSPR 102, 204 DPR ___ (2020); *In re García Cabrera*, 201 DPR 902, 918 (2019); *In re Márquez Colón*, 198 DPR 509, 518 (2017); *In re Maldonado Maldonado*, 197 DPR 802, 809 (2017); *In re Palmer Ramos*, 195 DPR 245, 254-255 (2016); *In re Toro González II*, 193 DPR 877, 889 (2015); *In re Vargas Velázquez*, 193 DPR 681, 693 (2015); *In re Ayala Oquendo*, 185 DPR 572, 580 (2012).

[8] *In re Ayala Oquendo*, supra; *In re Montalvo Guzmán*, 164 DPR 806, 810 (2005).

> ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. *Íd.*

Hemos expresado que la función que ejerce el notario va más allá de fungir como un autómata que legaliza las firmas, ya que posee el deber de verificar que el instrumento público cumpla con todas las formalidades de la ley, que es legal y verdadero, y finalmente, que es una transacción legítima y válida.[9] ´

Por otra parte, "[l]a fe pública [del] notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento".[10] Como resultado, un documento notarial avalado por la dación de fe de un notario se presume que cumple con todas las formalidades de ley y "brinda la confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobados con sus sentidos o ejecutados por él".[11]

Es conocido que como parte de las funciones de un notario se encuentra la preparación de una declaración de autenticidad o testimonio. El Art. 56 de la Ley Notarial, 4 LPRA sec. 2091, define la declaración de autenticidad o testimonio como

---

[9] *In re Peña Osorio*, 169 DPR 738, 788-789 (2019); *In re García Cabrera*, supra, pág. 919 (citando a *In re Torres Alicea*, 175 DPR 456, 460 (2009)); *In re Maldonado Maldonado*, supra.

[10] Art. 2 de la Ley Notarial, *supra.*

[11] *In re Arocho Cruz*, supra, págs. 365-366; *In re Toro Imbernón*, 194 DPR 499, 305 (2016); *In re González Hernández*, 190 DPR 164, 176-177 (2014); *In re Rivera Aponte*, 169 DPR 738, 741-742 (2007).

> [Un]documento mediante el cual un notario a requerimiento de parte interesada, da testimonio de fe de un documento no matriz, además de la fecha del testimonio:
> (1) De la legitimación de las firmas que en él aparezcan, siempre que no se trate de los actos comprendidos en la sec. 2005 de este título ni en los incisos (1) a (6) de la sec. 3453 del Título 31;
> (2) de haber tomado juramento por escrito;
> (3) de que es traducción fiel y exacta de otro, siempre que conozca ambos idiomas y así lo certifique el propio testimonio;
> (4) de que es copia fiel y exacta de un documento que no obra en un protocolo notarial, o
> (5) en general, de la identidad de cualquier objeto o cosa […].

Las declaraciones juradas son testimonios de legitimación de firma.[12] En consecuencia, "los notarios no pueden dar fe notarial en un documento en el cual la persona que pretende la otorgación no compareció personalmente".[13] Así, el notario que incurre en la conducta mencionada quebranta la fe pública notarial y afecta la confianza depositada en el sistema de autenticidad documental.[14] Además, incurre en una de las faltas más graves, a saber, la certificación de un hecho falso.[15]

---

[12] *In re Vázquez Margenat*, *supra*; *In re Llanis Menéndez*, 175 DPR 22, 25-26 (2008).

[13] *In re Vázquez Margenat*, *supra*; *In re Flores Martínez*, supra, pág. 702; *In re Arocho Cruz*, supra, págs. 366-367; *In re Vargas Velázquez*, supra, pág. 690; *In re Rivera Aponte*, supra, pág. 744; *In re Surillo Ascar*, 160 DPR 742, 743 (2004); *In re Vargas Hernández*, 135 DPR 603, 608 (1994); *In re Medina Lugo*, 136 DPR 120, 124 (1994).

[14] *In re Vázquez Margenat*, *supra*; *In re Arocho Cruz*, supra, pág. 367; *In re Medina Lugo*, supra.

[15] *In re Márquez Colón*, *supra*, pág. 519; *In re Vargas Velázquez*, supra; *In re Llanis Menéndez*, supra, pág. 26; *In re Rivera Aponte*, supra; *In re Surillo Ascar*, supra; *In re Vargas Hernández*, supra, pág. 607.

Valga señalar que la Regla 67 del Reglamento Notarial, *supra*, dispone que el testimonio de legitimación de firma acredita el hecho de que, en determinada fecha, se firmó un documento en presencia del notario y que esa persona es quien dice ser. También, establece que la legitimación de la firma podrá o no comprender el juramento. Asimismo, precisa que el notario tiene que hacer constar, tanto en el testimonio como en el Registro de Testimonios, que conoce personalmente al firmante o que lo ha identificado mediante los métodos supletorios que provee el Art. 17 de la Ley Notarial, 4 LPRA sec. 2035. Al hacerlo, el notario garantiza lo siguiente: (1) la identidad del firmante, y (2) que se realizó el acto ante el notario.[16]

De otro lado, el Art. 12 de la Ley Notarial, 4 LPRA sec. 2023, impone al notario el deber de rendir un Informe de Actividad Notarial Mensual, donde relacionen, entre otros, por número del testimonio autorizado, el nombre de las partes, la fecha y el objeto del testimonio.[17] El incumplimiento con el requisito de presentar los informes notariales menoscaba la fe pública investida en los notarios del País. A fin de cuentas, "los índices mensuales e informes anuales de actividad notarial garantizan la certeza de los documentos en [los] que

---

[16] Véase *In re Vargas Velázquez*, supra; *In re Llanis Menéndez*, supra, pág. 26.

[17] *In re Arocho Cruz*, supra, págs. 367-368; *In re Cabrera Acosta*, 193 DPR 461, 466 (2015).

intervienen los notarios y evitan el riesgo de manipulación y fraude".[18] En consecuencia, "un notario que asegure que una persona figuró como compareciente en una declaración jurada en el Índice de Actividad Notarial presentado sin ser cierto, quebranta los Arts. 2, 12 y 56 de la Ley Notarial, las Reglas 65, 66, 67 del Reglamento Notarial y el Canon 35".[19]

Es preciso puntualizar que la certificación de un hecho falso no sólo viola las disposiciones de la Ley Notarial, sino que también viola el deber de sinceridad y honradez que impone el Canon 35 del Código de Ética Profesional, *supra*, a todos los abogados, así como el deber de practicar la profesión de una forma honrosa y digna que impone el Canon 38 del Código de Ética Profesional, *supra*. Ciertamente, no enaltece la profesión legal el notario que no se desempeñe con la cautela y el celo que requiere la función pública del notariado.[20]

Finalmente, reiteramos que el incumplimiento del notario con las disposiciones de la Ley Notarial, *supra*, y su Reglamento, *supra*, equivale a una infracción disciplinaria e incumplimiento de los Cánones del Código de Ética Profesional, *supra*. El compromiso de la labor de

---

[18] *In re Cabrera Acosta*, supra, págs. 466-467 (citando a *In re Santiago Ortiz*, 191 DPR 950, 961 (2014)).

[19] *In re Vázquez Margenat*, supra.

[20] *In re Vázquez Margenat*, supra. Véanse, además: *In re Charbonier Laureano*, 2020 TSPR 66, 204 DPR __ (2020); *In re Vera Vélez*, 148 DPR 1, 8 (1999). Véanse: Art. 56 de la Ley Notarial, supra; Reglas 65, 66 y 67 del Reglamento Notarial, supra.

un notario va atado al deber de diligencia comprendido en el Canon 18 del Código de Ética Profesional, *supra*.

## A. Canon 18 (Competencia del abogado y consejo del cliente)

El Canon 18 del Código de Ética Profesional (Canon 18), *supra*, requiere que los abogados rindan una labor idónea de competencia y diligencia.[21] Asimismo, el notario debe demostrar que posee los conocimientos jurídicos necesarios durante la ejecución de sus funciones.[22] Consecuentemente, un notario que viola las disposiciones de la Ley Notarial de Puerto Rico, *supra*, y su Reglamento, *supra*, contraviene lo dispuesto en este canon al no ejercer la profesión con el cuidado y la prudencia que esta requiere.[23] Por lo tanto, cuando un notario infringe el deber que impone este Canon no ejerce la profesión con el cuidado y la prudencia que esta requiere.

## B. Canon 35 (Sinceridad y honradez)

El Canon 35 del Código de Ética Profesional (Canon 35), *supra*, exige que los miembros de la profesión legal se conduzcan de forma sincera y honrada y, en particular, que se "ajust[en] a la sinceridad de los hechos al

---

[21] *In re Peña Osorio*, 169 DPR 738, 790 (2019); *In re García Cabrera*, supra, págs. 924-925; *In re Maldonado Maldonado*, supra, págs. 812-813.

[22] *In re Sánchez Reyes*, supra, pág. 367; *In re Torres Rivera*, 2020 TSPR 23, 204 DPR ___ (2020).

[23] *In re Medina Torres*, 200 DPR 610,628-629 (2018); *In re Flores Martínez*, supra, págs. 701-702; *In re Arocho Cruz*, supra; *In re Palmer Ramos*, supra, págs. 254-255; *In re Toro González II*, supra, pág. 890; *In re Muñoz Fernós*, 184 DPR 679, 685 (2012); *In re Maldonado Maldonado*, supra, pág. 813 (citando a In re Aponte Berdecía, 161 DPR 94, 106 (2004)) ("Una vez un notario contraviene la ley vigente, incurre en una práctica notarial indeseable y contraviene el canon mencionado").

examinar testigos, al redactar afidávits u otros documentos". Como se puede colegir, el notario que asevere cualquier hecho en un instrumento público que no concuerde con la verdad, infringe la fe pública notarial que, a su vez, constituye una violación al Canon 35 del Código de Ética Profesional, *supra*, independientemente de si hubo intención de faltar a la verdad.[24]

### C.    Canon 38 (Preservación del honor y dignidad de la profesión)

El Canon 38 del Código de Ética Profesional (Canon 38), *supra*, puntualiza que los dos valores principales con los que debe cumplir un abogado son la dignidad y el honor al ejercer la abogacía y en su vida privada. Para ello, instituye el deber de evitar hasta la apariencia de conducta profesional impropia.

Un abogado que incurre en incumplimiento del Canon 35 del Código de Ética Profesional, *supra*, también infringe el Canon 38 del Código de Ética Profesional, *supra*, pues la referida acción, denota una conducta impropia que tiene un efecto lesivo en la honra de la profesión, ya que la conducta que realiza afecta sus condiciones morales y hace

---

[24] *In re García Cabrera*, supra, pág. 936; *In re Pagani Padró*, 198 DPR 812, 825 (2017); *In re Maldonado Maldonado*, supra, pág. 810 esc. 15; *In re Ayala Oquendo*, supra, pág. 583. (2012); *In re Torres Villanueva*, 168 DPR 185, 191 (2006); *In re Collazo Sánchez*, 159 DPR 769, 773-774 (2003).

que sea indigno de pertenecer a este foro.[25] Claramente, "[n]o exalta la profesión legal el notario que no desempeñe con cautela y el celo que demanda la función pública del notariado".[26]

Expuesta la norma jurídica que aplica a los antecedentes fácticos reseñados, pasemos a evaluar la conducta exhibida por el licenciado Villalona Viera.

### III

Debemos determinar si el licenciado Villalona Viera infringió los Arts. 2, 12 y 56 de la Ley Notarial, *supra*, las Reglas 65, 66 y 67 del Reglamento Notarial, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*, al ejercer sus funciones notariales.

La Queja (AB-2019-116) tuvo su origen con el referido de la *Resolución* emitida por la Jueza Seijo Ortiz, en el caso El Pueblo de Puerto Rico vs. Wilfredo Gracia Delgado y otros (Caso Núm. FMI2019-0020) en el que quedó establecido que el licenciado Villalona Viera fue el notario que autorizó el traspaso de un vehículo que fue objeto de apropiación ilegal.

Según surge del Certificado de título que emitió el Departamento de Transportación y Obras Públicas (DTOP) en cuanto al vehículo Toyota Yaris 2009, el 4 de mayo de 2018, el licenciado Villalona Viera autenticó las firmas del señor Soto Díaz y la señora Cabrera Cancel mediante el

---

[25] *In re Vargas Velázquez*, *supra*, pág. 690; *In re Arocho Cruz*, *supra*, pág. 367; *In re Surillo Ascar*, *supra*, pág. 743.

[26] *Íd.*

Testimonio Núm. 26,596 para el traspaso del título del vehículo de motor a nombre del señor Soto Díaz.

Por otro lado, también surge del Índice de Actividad Notarial Mensual correspondiente al mes de mayo de 2018 y el Asiento Núm. 26,596 del Libro de Testimonios, que el licenciado Villalona Viera informó, bajo juramento, que en esa misma fecha autenticó las firmas de la señora Cabrera Cancel y el señor Soto Díaz, para un traspaso de vehículo, quienes no comparecieron ante él.

Como resultado de la evidencia presentada en el expediente, el notario violentó el principio de la fe pública notarial que recoge el Artículo 2 de la Ley Notarial, *supra.* Además, al certificar un hecho falso, el letrado incurrió en violación de los Artículos 56 y 57 de la Ley Notarial de Puerto Rico, *supra*, los cuales establecen que los testimonios o declaraciones de autenticidad son los documentos en los que los notarios dan fe de la fecha del documento, de la legitimación de las firmas que aparecen en él y de haber tomado juramento por escrito. De igual modo, violentó las Reglas 65 y 67 del Reglamento Notarial de Puerto Rico, *supra*, que corresponden a los Artículos 56 y 57 de la Ley Notarial de Puerto Rico, *supra*, referentes a los testimonios o declaraciones de autenticidad.

Con la conducta exhibida, el licenciado Villalona Viera también violentó los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. El letrado faltó a su deber

de diligencia, honradez y con ello, no exaltó la profesión legal al dar fe pública notarial de que legitimó las firmas en la Certificación de título para un traspaso de un vehículo de motor sin la comparecencia de las partes. Asimismo, cedió la custodia de la fe pública notarial a un tercero cuando confió en la información vertida por un gestor sobre las firmas. Finalmente, certificó falsamente en el Índice de Actividad Notarial Mensual correspondiente al mes de mayo de 2018 y en el Asiento Núm. 26,596 del Libro de Testimonios, que autenticó las firmas de la señora Cabrera Cancel y del señor Soto Díaz sin su comparecencia.

En cuanto a la determinación de la sanción disciplinaria, debemos considerar los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos.[27] En la evaluación de la sanción sobre la conducta del letrado, consideramos como atenuantes que el licenciado Villalona Viera se enfrentaba a su primera falta en los quince años que lleva ejerciendo

---

[27] *In re Sánchez Reyes*, supra; *In re Soto Aguilú*, supra, págs. 147-148; *In re López Santiago*, 199 DPR 797, 818 (2018); *In re Maldonado Maldonado*, supra, pág. 818.

la profesión; que no hubo ánimo de lucro; que admitió su error y expresó arrepentimiento y, además, que no causó dilación indebida durante el procedimiento disciplinario. Consecuentemente, considerada la totalidad de las circunstancias, procede que impongamos como sanción la suspensión inmediata del ejercicio de la abogacía por seis meses y de la notaría indefinidamente.[28]

Fundamentados en la normativa expuesta, concluimos que el licenciado Villalona Viera infringió los Artículos 2, 12, 56 y 57 de la Ley Notarial de Puerto Rico, *supra*, las Reglas 65 y 67 del Reglamento Notarial, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*. En consecuencia, ordenamos la suspensión inmediata del licenciado Villalona Viera del ejercicio de la abogacía por el término de seis meses, y del ejercicio de la notaría indefinidamente.

## IV

En vista de lo anterior, suspendemos inmediatamente al licenciado Villalona Viera del ejercicio de la abogacía por el término de seis meses, y a su vez, lo suspendemos de la práctica notarial indefinidamente.

En virtud de la suspensión, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial del señor Villalona Viera

---

[28] *In re Soto Aguilú*, supra, pág. 148; *In re Aponte Duchesne*, supra, págs. 258-259; *In re García Cabrera*, 188 DPR 186, 214-215 (2013); *In re Mulero Fernández*, 174 DPR 18, 38-39 (2008); *In re Monge García*, supra, pág. 388; *In re Chiques Velázquez*, 161 DPR 303, 307 (2004); *In re Vélez Lugo*, 164 DPR 751, 755-756 (2005).

y entregarlos al Director de la Oficina de Inspección de Notaría para el correspondiente examen e informe. De otra parte, la fianza que garantiza las funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Por último, le ordenamos al señor Villalona Viera notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos. Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Julio C. Villalona Viera
(TS-15,278)

AB-2019-0116

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de febrero de 2021.

En vista de lo anterior, suspendemos inmediatamente al Lcdo. Julio C. Villalona Viera del ejercicio de la abogacía por el término de seis meses, y a su vez, lo suspendemos de la práctica notarial indefinidamente.

En virtud de la suspensión, el Alguacil de este Tribunal deberá incautar inmediatamente la totalidad de la obra protocolar y sello notarial del señor Villalona Viera y entregarlos al Director de la Oficina de Inspección de Notaría para el correspondiente examen e informe. De otra parte, la fianza que garantiza las funciones notariales queda automáticamente cancelada. No obstante, la fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Por último, le ordenamos al señor Villalona Viera notificar a todos sus clientes de su inhabilidad para continuar con su representación y a devolverles tanto los expedientes de los casos pendientes como los honorarios recibidos por trabajos no rendidos. Además, deberá informar inmediatamente de su suspensión a los distintos foros judiciales y administrativos en los que tenga algún asunto pendiente y acreditar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la abogacía de solicitarlo en el futuro.

Notifíquese inmediatamente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco emite la siguiente expresión:

"La Jueza Asociada señora Pabón Charneco suspendería al Lcdo. Julio Villalona Viera por un término de tres (3) meses del ejercicio de la abogacía y de forma indefinida del ejercicio de la notaría".


                              José Ignacio Campos Pérez
                              Secretario del Tribunal Supremo